(89 App. Div. 272.)

## McMORRIS v. HOWELL.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. MALICIOUS PROSECUTION—FACTS TO BE SHOWN.

To sustain an action for malicious prosecution, it is necessary for plaintiff to show that the prosecution was instituted by defendant, that it had been terminated in plaintiff's favor, that there was no probable cause therefor, and that defendant acted from malice.

2. FORCIBLE ENTRY AND DETAINER—CRIMINAL LIABILITY.

A workman engaged in repairing a building for one claiming a disputed title thereto is not liable to apprehension as "a person guilty of using, or procuring, encouraging or assisting another to use, any force or violence in entering upon or detaining any land or other possessions of another, except in the cases and the manner allowed by law," within the meaning of Pen. Code, § 465, relating to forcible entry and detainer.

3. MALICIOUS PROSECUTION—DIRECTING ARREST.

One who directs officers to make an arrest when no crime has been committed renders himself liable therefor.

4. ARREST WITHOUT WARRANT.

A claimant to possession of real property cannot make an arrest without warrant in an effort to maintain a momentary occupancy gained during the opposing claimant's temporary absence.

5. MALICIOUS PROSECUTION—EVIDENCE.

In an action for malicious prosecution, evidence *held* sufficient to sustain verdict for the plaintiff.

6. WILLFUL TRESPASS.

In a prosecution under Pen. Code, § 640, subd. 3, providing that a person who willfully severs from the freehold of another anything attached thereto shall be guilty of a misdemeanor, the word "willfully" means something more than a voluntary act, and more than an intentional act which in fact is wrongful. It includes the idea of acting intentionally with a wrongful purpose, and does not apply to one who, being employed to make repairs in the interior of a building, in order to gain admittance broke the padlock which had been placed on an unoccupied part thereof by one claiming to own the building, as against the employer of the person arrested.

Appeal from Trial Term, Suffolk County.

Action by James McMorris against Harri M. Howell. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, and HOOKER, JJ.

Harri M. Howell (George H. Furman, on the brief), for appellant. I. J. Beaudrias, for respondent.

WOODWARD, J. The defendant appeals from a judgment, entered on the verdict of a jury, awarding the plaintiff damages in the sum of $500 and costs for two alleged malicious prosecutions and one false imprisonment by the defendant, and also from an order denying the defendant's motion for a new trial.

In the month of March, 1901, John J. Welstead and James E. Jennings were both claiming title to a certain building at Southampton; the former under a deed delivered to him in March, 1899, by one

¶ 3. See False Imprisonment, vol. 23, Cent. Dig. § 45.

Read, and the latter under a tax deed from the county treasurer, dated November 14, 1900. · The defendant was agent for Jennings, and the plaintiff a workman employed by Welstead. Welstead directed the plaintiff to make certain repairs in the interior of the building, and, in order to gain admittance for that purpose, the plaintiff broke a padlock which had been placed by the defendant upon an unoccupied part of the building. Thereupon the defendant laid before a justice of the peace an information charging the plaintiff with the crime of malicious mischief. The plaintiff was arrested upon a warrant, and subsequently discharged by the justice. He returned to the building, resumed his work, and continued for several days making the repairs directed by his employer, Welstead. Upon attempting to enter the building one day, he was met at the door by the defendant and two officers—a deputy sheriff and a police constable—who refused to allow him to go inside. The defendant stood in the doorway. After some words, the plaintiff pushed against and by the defendant and entered the building, where he was immediately seized and handcuffed, or secured with "nippers," by the combined efforts of the defendant and the officers; the officers acting under the instructions of the defendant. The plaintiff was forthwith taken before a justice of the peace, where he was charged, upon the information of the defendant, with violating section 465 of the Penal Code. He was admitted to bail, and subsequently tried and discharged. The justice has no record that a warrant was issued at any time during this proceeding.

The first malicious prosecution alleged in the complaint in this action was instituted by the defendant upon an information charging the plaintiff with having violated subdivision 3 of section 640 of the Penal Code, which provides: "A person who wilfully * * * severs from the freehold of another * * * anything attached thereto * * * shall be deemed guilty of a misdemeanor." To sustain this action, it was necessary for the plaintiff to show that the prosecution for malicious mischief was instigated by the defendant; that it had been terminated in the plaintiff's favor; that there was no probable cause for the prosecution, and that the defendant acted from malice. Vanderbilt v. Mathis, 5 Duer, 304; Bigelow's Cases on Torts, p. 58. Probable cause has been variously defined as "reasonable cause, such as would operate on the mind of a discreet man; * * * probable cause, such as would operate on the mind of a reasonable man." "There must be such a state of facts as would lead a man of ordinary caution and prudence to believe and entertain an honest and strong suspicion that the person is guilty." ·Cooley on Torts (2d Ed.) p. 209. "Probable cause for preferring a charge of crime is shown by facts, actual, or believed by him (the plaintiff) to be actual, which would create a reasonable suspicion in the mind of a reasonable man." Bigelow on the Law of Torts, p. 98. The jury had first to determine, then, whether there was probable cause for the prosecutions instituted by the defendant against the plaintiff, within the meaning of that term as here defined. In view of the fact that the record shows the defendant was an attorney at law who had been in active practice for 15 years; that he was at the time of both ar-

rests fully aware that the plaintiff was in the employ of a person claiming the legal title to the property, and was on the premises by that person's direction; and that summary proceedings had been begun by Jennings to recover possession of the property—we have no hesitation in saying that the verdict of the jury was fully sustained by the evidence in respect both to the two alleged malicious prosecutions and the false imprisonment. "The question of what constitutes probable cause," said Chief Judge Church in Fagnan v. Knox, 66 N. Y. 525, 528, "does not depend upon whether the offense has been committed in fact, nor whether the accused is guilty or innocent, but upon the prosecutor's belief, based upon reasonable grounds. Bacon v. Towne, 4 Cush. 238. The prosecutor may act upon appearances, and if the apparent facts are such that a discreet and prudent person would be led to the belief that the accused had committed a crime, he will not be liable in this action, although it may turn out that the accused was innocent. Carl v. Ayers, 53 N. Y. 17. If there is an honest belief of guilt, and there exist reasonable grounds for such belief, the party will be justified. But, however suspicious the appearances may be from existing circumstances, if the prosecutor has knowledge of facts which will explain the suspicious appearances and exonerate the accused from a criminal charge, he cannot justify a prosecution by putting forth the prima facie circumstances, and excluding those within his knowledge which tend to prove innocence."

In Wass v. Stephens, 128 N. Y. 123, 28 N. E. 21, the essential facts were singularly like those in the case at bar. In that case the defendant, who owned or had control of certain waterworks, entered into a contract with the park commissioners of the city of Brooklyn to supply water to Prospect Park, and the defendant's pipes were connected with the mains belonging to the city, which were under the control of the commissioners. On account of an alleged failure of the defendant to perform certain conditions of the contract, the commissioners ordered the plaintiff, who was inspector of parks in Brooklyn, to disconnect the defendant's pipes. This the plaintiff did in a proper manner, causing no unnecessary injury to the defendant's property. The defendant, knowing that the plaintiff was acting under the orders of the park commissioners, who were his superior officers, presented to a magistrate a verified complaint, which did not disclose the plaintiff's official relation to the commissioners, or the circumstances under which he acted, but alleged that he "did commit a misdemeanor, to wit, by maliciously and wilfully cutting the water main" of defendant, against the statute (Pen. Code, § 639), which provides that "any person who wilfully or maliciously displaces, removes, injures or destroys * * * a pipe or main for conducting water or gas * * * is punishable by imprisonment for not more than two years." The plaintiff was arrested under a warrant, and the proceedings were subsequently terminated by his discharge. In affirming a judgment of the General Term, which affirmed a judgment in favor of the plaintiff, entered upon a verdict in an action brought to recover damages for malicious prosecution, the Court of Appeals said, in an opinion by Judge Andrews:

"When the defendant applied to the magistrate for a warrant, he was chargeable with knowledge that in obeying the directions of the park commissioners the plaintiff had not 'maliciously and willfully' disconnected the pipes, as charged in his complaint. He did not disclose to the magistrate the relation in which the plaintiff stood to the commissioners, or the circumstances under which he acted. * * * While it is true that what constitutes probable cause, where an arrest has been made, does not depend upon the question whether an offense has been actually committed, or upon the innocence of the accused, but upon the prosecutor's belief of his guilt, based upon reasonable grounds, nevertheless, applying this test to this case, the jury were justified in their conclusion that the defendant had no reasonable ground for believing that the charge made by him was true. The plaintiff intentionally disconnected the pipes, and it may be conceded in so doing violated a right of the defendant. But the word 'willfully' in the statute means something more than a voluntary act, and more also than an intentional act which in fact is wrongful. It includes the idea of an act intentionally done with a wrongful purpose, or with a design to injure another, or one committed out of mere wantonness or lawlessness."

So, in the case here under review, the magistrate who issued the warrant in the first prosecution, and before whom the plaintiff was taken in the second instance, was not informed of the fact that the plaintiff was not acting independently, but under the direction of one claiming title to the property. He therefore had nothing to lead him to any conclusion but that the plaintiff had acted with a wrongful purpose. If the word "willfully," as used in section 639, has the meaning assigned to it by the Court of Appeals, there is no reason why it should have a different meaning in section 640, where the construction is precisely the same. The Wass Case is a conclusive authority on the point.

The jury's conclusion that the second malicious prosecution was without probable cause was fully sustained by the evidence, and we believe the existence of malice was, in both instances, a fair deduction. Bigelow on the Law of Torts, pp. 16–20, 106, 107. In addition to what has been said in regard to the first prosecution, which applies also to the second, it seems clear that the plaintiff, on the occasion when he was taken into custody by the officers, had done nothing to render himself liable to apprehension as a criminal—as "a person, guilty of using, or of procuring, encouraging or assisting another to use, any force or violence in entering upon or detaining any lands or other possessions of another, except in the cases and the manner allowed by law." Pen. Code, § 465. The plaintiff was merely going into the building to work, as he had been doing daily since his first arrest and discharge, and with the knowledge of the defendant. No force would have been necessary if the defendant had not taken a position squarely in the doorway. Only the slightest force appears to have been used by the plaintiff at any time until there was an unlawful attempt to accomplish an actual restraint of his person by the defendant and the officers, when he probably was acting in self-defense. Neither the officers nor the defendant had the right to arrest the plaintiff. He was not committing or attempting to commit a crime in their presence, and it is not claimed that he had at any time committed a felony. Code Cr. Proc. §§ 177, 183. The defendant rendered himself liable by directing the officers to make

the arrest, when no crime had been committed. Farnam v. Feeley, 56 N. Y. 451. The testimony relating to the second arrest may well be characterized in the language of the court in The People v. Smith, 24 Barb. 16, where it was said, in reviewing the evidence in an action for forcible entry:

"It is obvious that this proof falls altogether short of that which the well-settled rules of law require. The case shown is that of a mere ordinary entry, made under claim of title. If the defendant has no title, it is a common trespass. There was no great or unusual force; there was no terror; and, if there was either, it could not relate to the person of the prior occupant. There were no unusual weapons; no acts of violence; no menaces, threats, signs, or gestures, which could give any ground to apprehend injury or danger from standing in defense of the possession. The case is not brought within the words of the statute or the mischief it was designed to prevent."

The defendant concedes that "Mr. Jennings was entirely satisfied with the improvements" the plaintiff was making, and that he "did not consider his work or his occupation and possession there as adverse at that time," and "did not consider it as injuring Mr. Jennings' title." It seems, then, that the strenuous activities of the defendant were directed to the securing of a bare possession of the premises. It would be a strange doctrine to announce that rival claimants to the possession of real property can each at will exercise the well-guarded right to arrest without warrant, in an effort to maintain a momentary occupancy gained during the other's temporary absence. Possession of a less scrambling and disorderly character may readily be secured by a person holding a conveyance of lands sold for unpaid taxes in the manner prescribed by section 154 of the tax law (chapter 908, p. 849, Laws 1896). In the absence of a substantial basis for arrest and criminal prosecution, this procedure recommends itself to the consideration of persons desiring the possession of real property under claim of title by virtue of tax sales.

The judgment should be affirmed, with costs. All concur.