968 F.2d 756
 Kenneth N. THOMPSON, Appellant,
v.
James R. REUTING (Police Officer), Appellee,
Edward Hale, Police Officer; Steve Cordwin, Police Officer,
Omaha Police Division.
Kenneth N. THOMPSON, Appellant,
v.
Edward HALE (Police Officer); Steve Cordwin (Police
Officer), Appellees.
 Nos. 91-1690, 91-1752.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 14, 1991.
Decided July 7, 1992.
 
 Francis T. Belsky and Terrance S. Dewald, Omaha, Neb., on the brief, for Kenneth N. Thompson.
 Herbert M. Fitle, James E. Fellows and Wendy E. Hahn, Omaha, Neb., on the briefs, for appellees.
 Before LAY,* Chief Judge, RICHARD S. ARNOLD,** Circuit Judge, and STUART,*** Senior District Judge.
 RICHARD S. ARNOLD, Circuit Judge.
 
 
 1
 These appeals involve two separate actions brought by Kenneth N. Thompson under 42 U.S.C. § 1983 claiming that Omaha police officers violated his Fourth and Fourteenth Amendment rights. In No. 91-1752NE, Thompson claims the District Court erred in denying his motions for partial summary judgment, a directed verdict, and judgment notwithstanding the verdict or a new trial after a jury found in favor of the defendants on his claim that the police did not have a reasonable articulable suspicion to stop the car in which he was a passenger. We agree and reverse. In No. 91-1690NE, Thompson claims the District Court erred in dismissing his complaint. We affirm.I.
 
 
 2
 Although the cases have been consolidated for appeal because they involve the same plaintiff, they involve different defendants and claims. We shall discuss each of them in turn.
 
 
 3
 No. 91-1752NE involves events surrounding Thompson's arrest on November 12, 1987. On that day, around 8:20 p.m., Officers Hale and Cordwin of the Omaha Police Department (driving in separate cars) heard a radio dispatch indicating that police had received reports of "a suspicious brown Chevy Nova" near 48th and Sahler Streets. The officers received no other information in this dispatch.
 
 
 4
 After receiving the dispatch, Hale drove to the intersection of 48th and Sahler. He approached the intersection traveling on 48th Street and turned left onto Sahler Street. At this time, he saw a brown Chevy Nova stopped on Sahler Street at the intersection. As he was making his turn, the Nova turned right onto 48th Street. Hale then turned around and began following the Nova down 48th Street. He followed the Nova for five blocks. Although he could not see who was in the Nova and did not see any violations of the law or suspicious activity, he eventually flashed his lights and pulled the Nova over.
 
 
 5
 Hale stayed in his police car after stopping the Nova. He radioed in to the police department the Nova's make and license number. While waiting for the results of the license-plate check, Hale shone a spot light into the Nova and noticed for the first time that the driver and passenger were black men. He still did not see any suspicious activity or violations of the law.
 
 
 6
 After Hale received no reports on the Nova, he got out of his car and approached the Nova. He saw nothing suspicious. When he reached the car, he recognized the driver as Jerry Holly. He asked Holly for his license, registration, and proof of insurance. After looking at Holly's documents, he asked the passenger, Kenneth Thompson, for some identification. When Hale looked at Thompson, he "strongly suspected" that a warrant was out for his arrest. Hale remembered seeing Thompson's picture in a "wanted" bulletin several weeks earlier. At any rate, Thompson told Hale that he did not have any identification and that his name was James Johnson.
 
 
 7
 Despite Hale's suspicions about Thompson, he did not review the "wanted" bulletins he had in his police car to confirm his suspicions. Instead, he radioed in the names Jerry Holly and James Johnson to see if they were subject to outstanding arrest warrants. The search revealed no outstanding warrants. Indeed, the police had no records of a James Johnson at all.
 
 
 8
 Since the name James Johnson did not appear in police files, Hale began to suspect that Thompson had given him a false name. He went back to the Nova and asked Thompson if he had ever been arrested. Thompson said, "Yes, a couple of times." Hale then told Thompson he was taking him to the police station for an ID check. Thompson was searched, handcuffed, and placed in Hale's police car with the help of Officer Cordwin, who had since arrived on the scene.
 
 
 9
 On the way to the police station, Thompson told Hale his real name. After getting Thompson's name, Hale found out that Thompson was the subject of an outstanding warrant for robbery. At this time, Hale formally arrested Thompson. Thompson was eventually tried on the robbery charges related to the outstanding warrant. In those criminal proceedings, he challenged the constitutionality of Hale's stop of the Nova. The trial court rejected his claim, and Thompson was convicted on two counts of robbery and two counts of using a weapon to commit a felony. He is currently serving a sixty-year sentence.
 
 
 10
 Although the Nebraska Supreme Court rejected Thompson's challenges to his conviction,[1] he brought this action for damages under 42 U.S.C. § 1983 against Hale and Cordwin. He claimed that the defendants violated his Fourth and Fourteenth Amendment rights by stopping the Nova without a reasonable articulable suspicion and later arresting him. Prior to trial, Thompson moved for partial summary judgment on his claim that Hale's stop of the car was unconstitutional as a matter of law. The Court denied the motion, and the case proceeded to trial. At trial, Thompson moved for a directed verdict on his claim against Hale. Again, the Court denied the motion. After the jury found in favor of the defendants, the District Court rejected Thompson's motion for judgment notwithstanding the verdict or a new trial. This appeal followed.
 
 
 11
 Although the parties do not mention it in their briefs, resolution of the issues presented by this case begins with the proposition that in the absence of a genuine dispute over material facts, the issue of whether Hale had a reasonable articulable suspicion to justify stopping the Nova is a question of law. See, e.g., Linn v. Garcia, 531 F.2d 855, 861 (8th Cir.1976). Here, the parties did not dispute facts with any legal relevance.[2] Consequently, the District Court erred by submitting the case to the jury.
 
 
 12
 Having concluded that this case should have been decided by the District Court, we turn to the merits of that decision. In its memorandum denying plaintiff's motion for judgment notwithstanding the verdict or a new trial, the Court recited the following facts as providing a sufficient basis for the stop:
 
 
 13
 1. Officer Hale received a dispatch of a suspicious brown Nova car in the vicinity of 48th and Sahler Streets;
 
 
 14
 2. It was dark at the time he received the radio dispatch;
 
 
 15
 3. When he arrived at 48th and Sahler, the vehicle at issue, a brown Nova, was the only vehicle in the vicinity;
 
 
 16
 4. The vicinity was a low-traffic area and Sahler Street West from 48th was a dead-end street about one to two blocks long;
 
 
 17
 5. Officer Hale was an experienced police officer who had lived in the neighborhood in question and he knew it to be a high-crime area; and
 
 
 18
 6. From the outside he was unable to tell how many occupants were in the car or their color or sex.
 
 
 19
 Thompson v. Hale, CV88-L-220, Memorandum and Order on Motion for Judgment Notwithstanding the Verdict or, in the Alternative, for New Trial (D.Neb., Mar. 22, 1991). With respect, we disagree with the District Court's conclusion. These facts, as a matter of law, do not establish that Hale had an objectively reasonable suspicion that the occupants of the Nova were involved in criminal activity in order to justify stopping it under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
 
 
 20
 In Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the Supreme Court reaffirmed the principle that "[t]he officer [making a Terry stop] ... must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." Id. at 329, 110 S.Ct. at 2416 (quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)) (internal quotations omitted). All of the information available to Officer Hale was inchoate and unparticularized. He did not see any violations of the law. Facts such as being in a high-crime area, in the dark, and unable to see the occupants of the car are very general and provide no information about the people in the Nova, much less information indicating that the people may have committed a crime. The additional information provided by the dispatch does not make up the difference. A report that a particular car is "suspicious" simply does not indicate whether its occupants may be engaged in criminal activity.
 
 
 21
 The District Court should have directed a verdict in favor of the plaintiff on his claim that Hale stopped the Nova without a reasonable articulable suspicion in violation of the Fourth Amendment. We therefore reverse the judgment of the District Court and remand the case for further proceedings.[3] The remand, however, concerns only the case against Hale. The co-defendant, officer Cordwin, was in a separate car. He did not arrive on the scene until Hale had already made the unlawful stop. As to Cordwin, the judgment entered in accord with the jury's verdict is affirmed.
 
 II.
 
 22
 Thompson's claim against Officer Reuting requires a less extended discussion. In his complaint, Thompson alleged that Reuting obtained a warrant for his arrest--apparently the same warrant upon which Officer Hale arrested Thompson--on the basis of an affidavit which did not establish probable cause. The District Court dismissed the complaint for failure to state a claim upon which relief could be granted. Although we do not agree with the reasoning used by the District Court, we affirm its dismissal of the complaint.
 
 
 23
 In Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the Supreme Court held that police officers seeking arrest warrants are entitled to qualified immunity for their actions unless "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable...." Id. at 344-345, 106 S.Ct. at 1098. The issue is not whether the affidavit actually establishes probable cause, but rather whether the officer had an objectively reasonable belief that it established probable cause. In the affidavit Thompson challenges here, Reuting provided descriptions of two people who robbed a restaurant and indicated that an employee of the restaurant had identified Thompson in a photo array as one of those people. Facts Thompson claims are missing from the affidavit--such as the fact that Reuting did not personally interview the employee who identified Thompson as one of the robbers--do not demonstrate that "a reasonably well-trained officer ... would have known that his affidavit failed to establish probable cause...." Id. at 345, 106 S.Ct. at 1098. We therefore affirm the District Court's dismissal of Thompson's complaint on the ground that Reuting was entitled to qualified immunity for his actions.
 
 III.
 
 24
 The judgment of the District Court in No. 91-1690NE is affirmed. The judgment in No. 91-1752NE is affirmed as to Cordwin. As to Hale, the judgment is reversed, and the cause is remanded to the District Court for further proceedings consistent with this opinion.
 
 
 25
 It is so ordered.
 
 
 
 *
 The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed
 
 
 **
 The Honorable Richard S. Arnold became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992
 
 
 ***
 The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa, sitting by designation
 
 
 [1]
 See State v. Thompson, 231 Neb. 771, 438 N.W.2d 131 (1989). The Court held the stop of which Thompson complains in this action invalid, but nonetheless approved the admission of two items of evidence obtained after the stop. The admission of one piece of evidence was held to be harmless, and the Court held that the chain of causation leading to the other one was so attenuated as to dissipate the taint of the unlawful stop
 
 
 [2]
 Officers Hale and Cordwin said the dispatcher informed them of a "suspicious brown Chevy Nova." A tape of the dispatch indicates that the dispatcher referred only to "a suspicious vehicle." Even if the dispatcher stated that the suspicious car was a "brown Chevy Nova," however, our analysis would be the same. We therefore assume that Officers Hale and Cordwin received a report of a "suspicious brown Chevy Nova."
 
 
 [3]
 It appears that any damages available would be only nominal. The plaintiff's conviction and imprisonment are not attributable to the stop. The Supreme Court of Nebraska so held on his direct appeal from the conviction, and that holding binds both Thompson and us in this Section 1983 action