David J. KOHL, Plaintiff–Appellee,

v.

Joseph M. CASSON, Individually, and in his Official Capacity as County Attorney of Jefferson County, Nebraska, Defendant–Appellant,

County of Jefferson, a Body Politic and Corporate of the State of Nebraska, Defendant,

Mitch Siebe, Individually and in his Official Capacity as Police Officer for the City of Fairbury, Defendant–Appellant,

City of Fairbury, a Body Politic and Corporate of the State of Nebraska; Lewis J. Mason, in his Official Capacity as City Councilman of the City of Fairbury, Nebraska; Marvin Engel, in his Official Capacity as City Councilman of the City of Fairbury, Nebraska; Joe Jelinek, in his Official Capacity as City Councilman of the City of Fairbury, Nebraska; Gene Siefford, in his Official Capacity as City Councilman of the City of Fairbury, Nebraska; Dan Stanton, in his Official Capacity as City Councilman of the City of Fairbury, Nebraska; Harley Brown, in his Official Capacity as City Councilman of the City of Fairbury, Nebraska; Marvin Moerer, in his Official Capacity as City Councilman of the City of Fairbury, Nebraska; Chris Goeking, in his Official Capacity as City Councilman of the City of Fairbury, Ne-

David J. KOHL, Plaintiff–Appellant,

v.

Joseph M. CASSON, Individually, and in his Official Capacity as County Attorney of Jefferson County, Nebraska; County of Jefferson, a Body Politic and Corporate of the State of Nebraska; Mitch Siebe, Individually and in his Official Capacity as Police Officer for the City of Fairbury; City of Fairbury, a Body Politic and Corporate of the State of Nebraska; Lewis J. Mason, in his Official Capacity as City Councilman of the City of Fairbury, Nebraska; Marvin Engel, in his Official Capacity as City Councilman of the City of Fairbury, Nebraska; Joe Jelinek, in his Official Capacity as City Councilman of the City of Fairbury, Nebraska; Gene Siefford, in his Official Capacity as City Councilman of the City of Fairbury, Nebraska; Dan Stanton, in his Official Capacity as City Councilman of the City of Fairbury, Nebraska; Harley Brown, in his Official Capacity as City Councilman of

braska; Deb Klaus, in her Official Capacity as City Councilwoman of the City of Fairbury, Nebraska; Douglas G. Rosener, in his Official Capacity as City Attorney of the City of Fairbury, Nebraska, Defendants.

Nos. 92–3366, 92–3458.

United States Court of Appeals,
Eighth Circuit.

Submitted May 10, 1993.

Decided Sept. 28, 1993.

William J. Panec, Fairbury, NE, argued, for plaintiff-appellant.

Randall L. Goyette, Lincoln, NE, argued (Brenda S. Spilker, on brief), for defendants-appellees.

Before BOWMAN, WOLLMAN, and MAGILL, Circuit Judges.

WOLLMAN, Circuit Judge.

David J. Kohl filed this lawsuit pursuant to 42 U.S.C. § 1983 against the city of Fairbury, Nebraska; the county of Jefferson, Nebraska; various city officers in their official capacities; Jefferson County Attorney Joseph Casson in both his official and individual capacities; and Fairbury police officer Mitch Siebe in both his official and individual capacities. The defendants filed a motion to dismiss. The district court granted the motion with respect to the city, the county, and all other defendants in their official capacities, but denied the motion to dismiss with respect to the claims against Casson and Siebe individually. Kohl appeals from the dismissal of the city, the county, and the other defendants in their official capacities. Casson and Siebe cross-appeal from the denial of their motion to dismiss the claims against them in their individual capacities. We affirm in part, reverse in part, and remand.

## I.

Kohl's complaint alleged the following facts, which we must accept as true when analyzing whether the district court ruled correctly on the defendants' motion to dismiss. *Patterson v. Von Riesen,* 999 F.2d 1235, 1237 (8th Cir.1993).

At approximately 1:41 a.m. on February 22, 1990, Duane Juhl, owner of Tooley's bar, reported to the Fairbury Police Department that a gym bag containing some checks and approximately $3,000 in cash had been stolen from his van while the van was parked outside The Stable restaurant, where Juhl had gone to eat after closing his bar for the night.

Around the time of the theft, there were approximately twelve people (customers and staff) in The Stable, which is the only restaurant in Fairbury that is open at that hour of the morning. Juhl told the police that he remembered one customer leaving the restaurant while he was there. That person had been a customer in Juhl's tavern earlier in the evening, was staying at the Holiday Motel in Fairbury, and was driving a brown van with Kansas license plates.

Later that morning, Fairbury police officer Mitch Siebe went to the Holiday Motel, where he learned that a David Kohl had been registered. Siebe discovered that Kohl was driving a brown 1977 Ford van with Kansas license plates, Kohl's lodging for two nights had been paid by a Tamra Esslinger, and no one had slept in the bed in Kohl's room during the previous night. Siebe then issued a bulletin to any law enforcement agency that might observe Kohl's van to contact the Fairbury Police Department.

During this time, Kohl travelled to Lincoln and Omaha, Nebraska, looking for work as a carpet layer. After finding no work, Kohl drove to Cedar Falls, Iowa. Officers from the Cedar Falls Police Department discovered that Kohl was staying at a Cedar Falls hotel. They investigated, and informed Siebe that Kohl had checked in on February 23, paying for two nights' lodging with cash. They also told Siebe that Kohl had subsequently paid for another night with cash from "a large roll of bills."

Based on the preceding information, Siebe conferred with County Attorney Casson, obtaining advice on the affidavit for Kohl's arrest warrant on the charge of stealing the $3,000 from Juhl's van. Siebe then prepared and signed the affidavit, which Kohl has incorporated by reference in his complaint. Siebe, accompanied by Casson, took the warrant to the Jefferson County Clerk–Magistrate, who issued a warrant for Kohl's arrest.

Pursuant to the arrest warrant, Cedar Falls police officers arrested Kohl on February 26. At the time of the arrest, the police took control of $1,998.87 in cash that Kohl had on his person, in addition to Kohl's van and some other personal belongings. Siebe transferred Kohl back to the Jefferson County, Nebraska, jail and retained the money and other property on Casson's advice. Because Kohl could not gain access to the $1,998.87, he could not post bond and thus remained in the Jefferson County jail.

Casson filed a felony theft charge against Kohl in the County Court for Jefferson County, Nebraska. After a preliminary hearing on April 4, the county court ruled that the state had failed to show that there was probable cause that Kohl had committed the Juhl theft. Casson then refiled the same theft charge in the District Court of Jefferson County. After a preliminary hearing on May 2, the district court ruled on May 7 that the state had failed to establish probable cause and ordered that Kohl be released. The district court also ordered that Kohl's money and property be returned to him.

During the time between the preliminary hearings in the county court and the district court, Kohl was involved in a scuffle with another incarcerated person. As a result of this incident, Casson filed a charge against Kohl alleging felony assault by a confined person. Kohl's complaint characterizes the incident as a "minor altercation [that] was immediately stopped with no one receiving any injury."

Because of the pending assault charge, Kohl could not obtain his release following the district court's dismissal of the theft charge until he posted bail. Kohl requested his money from Siebe in order to post bail. Siebe refused to release the money, relying upon Casson's advice not to release the money to Kohl immediately. Later that day, however, Casson told Siebe to give the money to Kohl. Siebe then released the money, which Kohl used to post bail.

On August 31, 1990, the district court quashed the information on the charge of assault by a confined person, ruling that because probable cause did not exist to arrest Kohl for the Juhl theft, he was not being lawfully confined at the time of the scuffle.

Pointing to state court findings of no probable cause, Kohl then instituted this section 1983 action in federal district court, alleging that Siebe and Casson had violated his constitutional right not to be seized and detained without probable cause. Kohl also alleged that Casson and Siebe's actions in causing his improper arrest and imprisonment were the product of the city and county's failure to train Fairbury police officers regarding the necessity for probable cause to support an arrest. Finally, Kohl's complaint included pendent state law claims for violations of the Nebraska Civil Rights Act; for common law false arrest, false imprisonment, and malicious prosecution; for negligent training poli-

cies on the city and county's part; and for deprivation of procedural due process rights under the Nebraska Constitution.

The district court granted the defendants' motion to dismiss with respect to the city, the county, and all other defendants in their official capacities. The court held that Kohl had failed to allege in his section 1983 municipal liability claims that there had been a pattern of similar incidents of unlawful arrests or that the city and county had notice of prior acts of police and prosecutorial misconduct. With respect to the claims against Siebe and Casson individually, the district court denied the motion to dismiss. The court held that Kohl had alleged the necessary elements of a section 1983 claim against these individuals and that the issue whether Casson and Siebe's actions were qualifiedly immune from liability was a factual question that required further development. The court then directed the entry of final judgment under Rule 54(b) on its order in favor of the city, the county, and the various officers in their official capacities so that that ruling could be reviewed contemporaneously with the ruling on the denial of immunity for Siebe and Casson.

## II.

We address first the cross-appeal, for our ruling on Kohl's complaint against Casson and Siebe is determinative of Kohl's complaint against the other defendants.

Casson contends that the district court erred in denying his motion to dismiss Kohl's claims against him in his individual capacity. Casson argues that he is absolutely immune from suit under 42 U.S.C. § 1983 for his actions taken with respect to the arrest and prosecution of Kohl.

■■■ Kohl's complaint alleges three potential causes of action under section 1983 against Casson in Casson's individual capacity. First, Kohl alleges that Casson prosecuted him in Nebraska county court and district court when he knew that there was not probable cause to believe that Kohl had committed the Juhl theft. This claim fails because a claim of malicious prosecution, without more, does not state a claim under 42 U.S.C.

§ 1983, which provides redress only for federal constitutional or statutory violations. *McNees v. City of Mountain Home, Ark.,* 993 F.2d 1359, 1361 (8th Cir.1993); *Sanders v. Sears, Roebuck & Co.,* 984 F.2d 972, 977 (8th Cir.1993). Moreover, prosecutors enjoy absolute immunity for their "conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed,* — U.S. —, —, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–96, 47 L.Ed.2d 128 (1976)); *see also Patterson v. Von Riesen,* 999 F.2d at 1237–38.

The second potential constitutional deprivation alleged against Casson in Kohl's complaint stems from Kohl's arrest. Kohl alleges that he was arrested without probable cause and that Casson advised Siebe on preparing an affidavit for the issuance of Kohl's arrest warrant and then, together with Siebe, presented the affidavit as true and sufficient to the Jefferson County Clerk–Magistrate.

■■■ As stated earlier, prosecutors enjoy absolute immunity in initiating a prosecution and in presenting the state's case, insofar as that conduct is intimately associated with the judicial phase of the criminal process. *Burns,* — U.S. at —, 111 S.Ct. at 1939 (citing *Imbler,* 424 U.S. at 430–31, 96 S.Ct. at 994–96). "Absolute immunity attaches to an official's function, rather than to an official's position." *Patterson,* 999 F.2d at 1237 (citing *Burns,* — U.S. at —, 111 S.Ct. at 1939); *see also Imbler,* 424 U.S. at 430, 96 S.Ct. at 994. Moreover, the official seeking the protection of absolute immunity bears the burden of establishing it for the function in question. *Buckley v. Fitzsimmons,* — U.S. —, —, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993). Thus, we must determine whether the functions of advising the police on an affidavit for an arrest warrant and presenting that affidavit to a judicial officer are covered by absolute immunity.

Proceeding in reverse order, we examine first a prosecutor's presentation of an affidavit for an arrest warrant to a judicial officer. The Supreme Court has not yet decided whether and to what degree a prosecutor

enjoys absolute immunity for this function. The Court has decided, however, two cases that provide guidance to our determination.

In *Burns,* the Court held that a prosecutor was absolutely immune for his actions in appearing before a judge and presenting evidence as the state's advocate in support of a motion for a search warrant. —— U.S. at ——, 111 S.Ct. at 1942. The Court reasoned that the issuance of a search warrant is "unquestionably a judicial act" and that "appearing at a probable cause hearing is 'intimately associated with the judicial phase of the criminal process.' " *Id.* (citing *Imbler,* 424 U.S. at 430, 96 S.Ct. at 994). On a second issue, the Court held that a prosecutor does not have absolute immunity when he advises police on the propriety of interrogation techniques or the existence of probable cause to make a warrantless arrest. *Id.* —— U.S. at ——, 111 S.Ct. at 1944–45.

In *Malley v. Briggs,* 475 U.S. 335, 342, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986), the Court held that the function of seeking an arrest warrant is subject only to qualified immunity, not absolute immunity. The Court stated that it could find no tradition of absolute immunity for one whose complaint causes an arrest warrant to issue, thereby mandating a holding that Congress did not intend to create such an absolute immunity when section 1983 was originally enacted. *Id.*

■ We conclude from *Burns* and *Malley* that a prosecutor is absolutely immune for appearing before a judicial officer to present evidence in support of an application for an arrest warrant, insofar as he acts as the state's advocate in presenting evidence and arguing the law. We can find no distinction between acting as the state's advocate when presenting evidence at a judicial hearing on the issuance of a search warrant, as in *Burns,* and performing the same function at a judicial hearing on the issuance of an arrest warrant. Both involve judicial acts and are intimately related to the judicial phase of the criminal process. Indeed, seeking an arrest warrant often constitutes the first step in a prosecution. Moreover, it is quite possible that a prosecutor might present evidence at a hearing that involves both an arrest warrant

for an individual and a search warrant for that individual's home. It would be incongruous to hold that the prosecutor's actions as an advocate and officer of the court would be absolutely immune for one half of the hearing (if the hearing could somehow metaphysically be divided in two) and only qualifiedly immune for the other half, for a prosecutor's function is identical throughout the entirety of such a proceeding.

The Court's holding in *Malley* does not mandate a different result, for *Malley* dealt with a different function—that of vouching for the truth of the contents of the complaint that "causes the warrant to issue." 475 U.S. at 342, 106 S.Ct. at 1096. Thus, where the prosecutor switches functions from presenting the testimony of others to vouching, of his own accord, for the truth of the affidavits presented to the judicial officer, the prosecutor loses the protection of absolute immunity and enjoys only qualified immunity, just as the police officer was held to have in *Malley.*

■ Accordingly, to the extent that Kohl's complaint alleges that Casson merely appeared before the clerk-magistrate with Siebe, Casson enjoys absolute immunity from suit. *Burns,* —— U.S. at ——, 111 S.Ct. at 1942. To the extent, however, that Kohl's complaint alleges that Casson advised Siebe on preparing the affidavit and that Casson then presented the affidavit as true to the clerk-magistrate, we must determine whether such conduct enjoys qualified immunity, because the Supreme Court has held that those functions fall outside the scope of absolute immunity. *Burns,* —— U.S. at ———— , 111 S.Ct. at 1944–45 (advising police); *Malley,* 475 U.S. at 342, 106 S.Ct. at 1097 (seeking arrest warrant).

■ The constitutional harm that Kohl alleges is his arrest pursuant to a warrant that was not supported by probable cause. As we have stated, "police officers seeking arrest warrants are entitled to qualified immunity for their actions unless 'the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.' " *Thompson v. Reuting,* 968 F.2d 756, 760 (8th Cir.1992) (quoting *Malley,* 475 U.S. at 344–45, 106 S.Ct. at 1098). Be-

cause Kohl alleges that Casson was performing, in essence, the function of seeking an arrest warrant, the test of qualified immunity is the same. In such a case, "[t]he issue is not whether the affidavit actually establishes probable cause, but rather whether the officer [or prosecutor] had an objectively reasonable belief that it established probable cause." *Thompson*, 968 F.2d at 760; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (holding that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

We conclude that Siebe's affidavit, which Kohl alleges was also adopted by Casson, presented sufficient facts supporting a finding of probable cause that reasonable officers could disagree whether probable cause in fact existed.[1] The affidavit stated that Kohl had been at Tooley's when Juhl telephoned a food order to The Stable just prior to closing his bar, was at The Stable when Juhl arrived, and left the restaurant while Juhl was eating, which was during the time that the theft occurred. The affidavit also stated that Kohl had not stayed in his motel room on the night of the theft, as the bed had not been slept in. Most importantly, the affidavit also stated that Tamra Esslinger had admitted paying for Kohl's motel room in Fairbury because Kohl had no money, yet Kohl had paid cash for two nights' lodging a couple of nights later and then paid for a third night with cash from "a large roll of bills." Although these facts do not conclusively establish probable cause to believe that Kohl stole the money from Juhl's van (as the two Nebraska courts held), it cannot be said that they are devoid of support for a finding of probable cause, especially when a person with no money is reported to be flashing a large roll of

bills just a couple of days after the theft of a large amount of cash. Thus, we hold that Casson, even if he vouched for the truth of Siebe's affidavit, is entitled to qualified immunity for presenting it to the clerk-magistrate.

■ The third potential constitutional deprivation alleged in the complaint for which Casson might be held liable stems from Kohl's accusation that Casson advised Siebe to improperly withhold the money taken from Kohl at the time of his arrest. We conclude that Casson is entitled to absolute immunity for retaining the money because it constituted potential evidence that Casson likely would have needed in the event that the case had proceeded to trial. *See Thompson v. Walbran*, 990 F.2d 403, 404 (8th Cir. 1993) (prosecutor absolutely immune for retaining defendant's property even after obtaining a conviction because it was important evidence that would be needed at trial, if the defendant succeeded in overturning the conviction on direct appeal or through a habeas petition). Casson retained the money (or directed Siebe to do so) only as long as the prosecution of Kohl remained viable. Casson returned the money to Kohl on May 7 (or directed Siebe to do so), shortly after verifying that the district court had ordered that Kohl be released on the theft charge and that the money be returned to him. Casson thus acted within his duties as a prosecutor and should not be held personally liable for retaining the money.

### III.

■ We also conclude that the district court should have granted Siebe's motion to dismiss the claims against him in his individual capacity. As discussed above, Siebe, like Casson, enjoys qualified immunity for preparing and presenting the affidavit for Kohl's arrest warrant because the affidavit was not

---

1. The district court denied the motion to dismiss the claims against Casson and Siebe individually on the ground that the reasonableness standard for qualified immunity involves a fact question, which courts should not decide on a motion to dismiss. When the facts presented in the complaint, however, even when accepted as true, fail to state a claim or clearly give rise to an immuni-

ty defense, the claim should be dismissed under Rule 12(b)(6). *Cross v. City of Des Moines*, 965 F.2d 629, 632 (8th Cir.1992). In this case, Kohl's complaint incorporated Siebe's affidavit. Thus, we accept as true that Siebe possessed the information found in his affidavit when he applied for Kohl's arrest warrant.

so lacking in indicia of probable cause as to have rendered official belief in its existence unreasonable. *Thompson v. Reuting,* 968 F.2d at 760. Also, Siebe may not be held liable for retaining the money while a criminal prosecution was viable because the money was potential evidence and, as the complaint alleges, Siebe was directed to do so by Casson.

## IV.

■ We turn next to the district court's dismissal of Kohl's claims against the city, the county, and the other defendants in their official capacities.

■ "We review the district court's grant of a motion to dismiss for failure to state a claim de novo." *Patterson v. Von Riesen,* 999 F.2d at 1237. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted). When analyzing the adequacy of a complaint's allegations under Federal Rule of Civil Procedure 12(b)(6), we must accept as true all of the complaint's factual allegations and view them in the light most favorable to the plaintiff. *Patterson,* 999 F.2d at 1237; *Davis v. Hall,* 992 F.2d 151, 152 (8th Cir.1993) (per curiam).

As indicated earlier, the district court dismissed the complaint against the city, the county, and the city officials on the ground that Kohl had failed to allege a pattern of similar incidents of unlawful arrest or that the city and county had notice of prior acts of police and prosecutorial misconduct.

The Supreme Court has recently issued a decision that provides guidance for determining whether a complaint adequately states a municipal liability claim in light of a Rule 12(b)(6) motion to dismiss. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). In *Leatherman,* the Court rejected the Fifth Circuit's "heightened pleading standard" for municipal liability claims. *Id.* —— U.S. at ——, 113

S.Ct. at 1163. The Fifth Circuit had affirmed the district court's dismissal of the complaint on the ground that the complaint had failed to set forth "any facts with respect to the adequacy (or inadequacy) of the police training" and had failed to demonstrate that there was a pattern of similar incidents which would establish the existence of an official policy. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 954 F.2d 1054, 1058 (5th Cir.1992). The Supreme Court held that requiring a plaintiff to allege particular instances of similar constitutional violations in order to defeat a motion to dismiss for failure to state a claim is inconsistent with the "liberal system of 'notice pleading' set up by the Federal Rules." —— U.S. at ——, 113 S.Ct. at 1163. The Court noted that the Federal Rules call for greater particularity only in pleading the actions listed in Rule 9(b), and concluded that the absence of municipal liability claims from Rule 9(b) means that courts may require only that the complaint set forth a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Id.*

The district court's rationale for dismissing the complaint against these defendants may not be sustainable in view of the holding in *Leatherman.* Nevertheless, the dismissal must be upheld in view of our holding that probable cause existed for the actions taken by Casson and Siebe. Because Casson and Siebe acted as reasonable officers in determining that there was probable cause to obtain a warrant for Kohl's arrest, there can be no basis for liability on the part of the county, the city, and the city officials based upon any alleged inadequacy in the training provided by these defendants. No amount of training could have prevented Casson and Siebe from doing exactly what they did here, which was to act reasonably on the information available to them at the time, notwithstanding the fact that the state trial courts ultimately disagreed with them on the issue of probable cause. Taking all of Kohl's allegations as true, then, there was no causal relationship between his arrest and any inadequacy in the training provided by the county, the city, and the city officials.

### V.

In Count IV of his complaint, Kohl alleges that the city, the county, Casson, and Siebe deprived him of his right under the Eighth Amendment to be free from excessive bail. This claim was properly dismissed because none of the defendants set Kohl's bail. Thus, there can be no causal connection between any action on the part of the defendants and any alleged deprivation of Kohl's Eighth Amendment rights. *Cf. City of Canton*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989) (the "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"); *Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980) (parole board members not liable under section 1983 for murder of girl by a parolee because the girl's death was "too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law").

Kohl also alleges in Count IV that the city, the county, Casson, and Siebe deprived him of property and liberty without due process of law. Kohl, however, fails to allege what process he did not receive that the defendants were obligated to provide. To the contrary, Kohl's complaint acknowledges that he received preliminary hearings on the sufficiency of the arrest warrant and that he was released pursuant to that process. Additionally, the complaint states that Kohl obtained a hearing on the detention of his money by the police department and that the department released the money to him shortly after receiving the district court's order to do so. Because the complaint fails to allege any basis for a violation of Kohl's due process rights, it does not state a claim upon which relief may be granted. *See Siegert v. Gilley*, 500 U.S. 226, ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) (if the complaint fails to adequately allege a statutory or constitutional claim, the analysis need proceed no further); *Cross v. City of Des Moines*, 965 F.2d 629, 632 (8th Cir.1992) (same).

### VI.

Finally, we are unsure of the status of Kohl's pendent state law claims. The memorandum portion of the district court's order discusses only the section 1983 claims in Kohl's complaint and does not mention the pendent state law claims. The order itself, however, appears to dismiss completely from the suit the city, the county, and all of the other defendants in their official capacities. Moreover, the parties' briefs to this court reflect an uncertainty concerning whether the state law claims were included in the district court's order. Thus, we express no opinion on the state law claims and simply remand them to the district court.

In sum, we hold that Casson and Siebe are entitled to either absolute or qualified immunity, and therefore we reverse the district court's denial of their motions to dismiss. We affirm the dismissal of the complaint as against the City of Fairbury, the County of Jefferson, and the other defendants in their official capacities. Finally, we do not pass on the complaint's state law claims, but remand them to the district court for such further proceedings as it may direct.

The judgment of the district court is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings consistent with this opinion.