Ronald HANSEL, Plaintiff,

v.

John SHERIDAN, Stephen Meyer, Melinda Blake, Joe Valentine, Mark A. Capozucco,, Defendants.

No. 93–CV–1034.

United States District Court,
N.D. New York.

Jan. 20, 1998.

70

Atherton & Wilner, Northfield Falls, VT
(Steven H. Atherton, of counsel), for Plaintiff.

Dennis C. Vacco, Attorney General, State of New York, Albany, NY (James B. McGowan, of counsel), for Defendants.

## MEMORANDUM, DECISION AND ORDER

McAVOY, Chief Judge.

Plaintiff Ronald Hansel brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth, Fifth, Eighth and Fourteenth Amendment rights. He also brings state law claims for assault and battery, intentional infliction of emotional distress and negligence. Defendants move for partial summary judgment and for an order, *in limine*, precluding plaintiff from introducing certain evidence at trial.

### I. BACKGROUND

#### A. Facts

Plaintiff Ronald Hansel resides in Richfield Springs, New York. Defendant John Sheridan is an investigator for the New York State Attorney General's Office. Defendants Stephen Meyer, Melinda Blake, Joe Valentine and Mark A. Capozucco are New York State Troopers. On May 17, 1993, an Otsego County Grand Jury returned an indictment against plaintiff and two fuel-oil businesses with which he was involved (L & F Fuels and M.O.T.S., Inc.) alleging violations of New York Environmental Conservation Law § 71–2711(3). *See* Def. Ex. A (May 17, 1993 Indictment). The charges stemmed from an alleged business practice of allowing stored fuel tanks to leak waste petroleum into the ground.

After plaintiff allegedly failed to show for an initial appearance, County Judge George S. Kepner, Jr. issued a bench warrant for his arrest on May 24, 1993. Pl.Ex. 6 at 5 (Transcript of 5/24/93 Proceedings in Otsego County Court). On May 25, 1997, defendants went to plaintiff's home to arrest him pursuant to the warrant. As plaintiff returned home in his tanker truck that day, he saw a New York State Police car pull into his yard, approximately 600–700 feet ahead of him.

Pl.Ex. 11 at 295 (Transcript of Pl. 4/9/94 Criminal Trial). He approached his driveway and pulled in; ahead of him, the police car was now parked. When plaintiff's truck reached the police car, the door of the car suddenly opened, and its occupant, Trooper Capozucco, began to get out. Plaintiff blew his horn, but did not see Capozucco exit. *Id.* 295–96. As plaintiff continued up the driveway, he saw Trooper Meyer standing behind another police car. *Id.* at 295. As plaintiff drove by, he heard a noise that he thought was Meyer hitting the truck with his fist. *Id.*[1]

Plaintiff got out of his truck and approached the defendants, all of whom were present. He alleges that defendants, in effectuating his ensuing arrest, used excessive force on him. Defendants allege that plaintiff resisted arrest.

Plaintiff subsequently was charged with one count of resisting arrest and two counts of second-degree reckless endangerment. *See* Def. Exs. D, E (Informations). Bail was set at $10,000. After a jury trial in the Town of Springfield Justice Court in April of 1994, plaintiff was convicted on the charge of resisting arrest and acquitted on the reckless endangerment charges. Def. Ex. L. (Certificate of Conviction dated 4/18/94); Pl. Ex 14. at 352–53 (Transcript of Pl. Criminal Trial of April 9, 1994). The conviction was reversed on appeal by the County Court on the ground that the Justice Court erred in instructing the jury that plaintiff's arrest was authorized as a matter of law. Def. Ex. M (Decision and Order of Judge Hugh C. Humphreys dated 11/4/94). The matter was remanded for a new trial in the Oneonta City Court, but was later dismissed on speedy trial grounds. Def. Ex. N (Decision of Oneonta City Court Judge Walter L. Terry, III dated 10/2/95).

#### B. Procedural History

Plaintiff filed his original Complaint in this Court on August 5, 1993, bringing federal civil rights and pendent state law claims

---

1. Capozucco claims that plaintiff narrowly missed striking him as he exited his patrol car. Def. Ex. E. Meyer alleges that he was standing *alongside* his patrol car as plaintiff passed, and that he had to "take evasive action" to avoid being struck by the tanker truck. *Id.*

against several defendants. Defendant Otsego County was dismissed by stipulation and order dated February 1, 1994. Defendant Jo Katz was dismissed based upon absolute immunity by order dated August 25, 1994. Summary judgment was granted as to defendant Owen Kelly in an order dated December 10, 1994.

Plaintiff's Amended Complaint was filed April 10, 1997. The Amended Complaint names the remaining defendants, and alleges § 1983 claims for excessive force, failure to intercede, malicious prosecution, excessive bail and conspiracy to deprive plaintiff of civil rights, all in violation of his rights under the Fourth, Fifth, Eighth and Fourteenth Amendments. Plaintiff also brings pendent state law claims for assault and battery, intentional infliction of emotional distress and negligence.

Defendants now move for partial summary judgment dismissing the Fifth Amendment, malicious prosecution, excessive bail, intentional infliction of emotional distress and negligence claims. Defendants also move for dismissal of, or *in limine* relief with respect to certain elements of plaintiff's damages.

The Court will address defendants' arguments *seriatim*.

## II. DISCUSSION

### A. Standard for Summary Judgment

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact. . . . the moving party is entitled to a judgment as a matter of law . . . where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249

(2d Cir.1985) *cert. denied* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

Once the moving party has met its burden, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 585–86. A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). The motion will not be defeated by a non-movant who raises merely a "metaphysical doubt" concerning the facts or who only offers conjecture or surmise. *Delaware & Hudson Ry. Co. v. Consolidated Rail*, 902 F.2d 174, 178 (2d Cir.1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991)(quoting *Matsushita*, 475 U.S. at 586).

It is with these considerations in mind that the Court addresses defendants' motion for summary judgment.

### B. Plaintiff's Claims

#### 1. Plaintiff's Fifth Amendment Claim

■ Though plaintiff brings no specific claim under the Fifth Amendment, his Amended Complaint makes scattered references to it. It is well-established, however, that the Fifth Amendment " 'governs the conduct of the federal government and federal employees, and does not regulate the activities of state officials or state actors.' " *Dawkins v. City of Utica*, 1997 WL 176328 at *4 (N.D.N.Y.) (Munson, S.J.) (quoting *Schanzer v. Rutgers University*, 934 F.Supp. 669, 679 n. 14 (D.N.J.1996)). Because it is undisputed that all defendants in this action are state officials, any Fifth Amendment claim brought by plaintiff is hereby dismissed.

#### 2. Malicious Prosecution

■ Defendants next argue that plaintiff's § 1983 malicious prosecution claims, prem-

ised upon the charges of resisting arrest and reckless endangerment, must be dismissed.

Though plaintiff's malicious prosecution claim is a federal claim for violation of his Fourth Amendment right to be free from unreasonable seizures, *see Albright v. Oliver*, 510 U.S. 266, 274–75, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir.1995), *cert. denied*, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996), the elements of this cause of action are otherwise identical to a state law malicious prosecution claim. *See Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir.1994); *Raysor v. Port Authority of New York and New Jersey*, 768 F.2d 34, 39 (2d Cir.1985), *cert. denied*, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986). Under New York State law, the elements of a malicious prosecution claim are:(1) the commencement or continuation of a criminal proceeding by defendants against plaintiff, (2) the termination of that proceeding in favor of the plaintiff, (3) the absence of probable cause for the criminal proceeding and (4) actual malice. *See Colon v. City of New York*, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983); *Pomento v. City of Rome*, 231 A.D.2d 875, 647 N.Y.S.2d 604, 605 (4th Dep't 1996); *Janendo v. Town of New Paltz Police Dep't*, 211 A.D.2d 894, 621 N.Y.S.2d 175, 177 (3d Dep't 1995). Defendants argue that (1) the dismissal on remand of the resisting arrest charge on speedy trial grounds does not, as a matter of law, constitute termination in plaintiff's favor, and (2) though plaintiff was acquitted of the reckless endangerment charges, defendants had probable cause for bringing those charges.

■ As to whether the resisting arrest prosecution terminated in plaintiff's favor, the Second Circuit recently noted, after an exhaustive review of the relevant decisions, that

the body of New York State caselaw, like the decisions of other states, holds that dismissals for lack of timely prosecution should generally be considered, for purposes of a claim of malicious prosecution, a termination favorable to the accused. We have seen no reason to infer that the New

York Court of Appeals would adopt a different view.

*Murphy v. Lynn*, 118 F.3d 938, 950 (2d Cir.1997). While this general rule may lead the Court to decide the issue as a matter of law, the factual circumstances leading up to the termination may present a jury question. *See id.* (citing *Russo v. State of New York*, 672 F.2d 1014, 1020 (2d Cir.1982), *modified*, 721 F.2d 410 (2d Cir.1983)).

Plaintiff's conviction on the charge of resisting arrest was reversed on the ground that the trial judge had incorrectly charged the jury. The error was not technical in nature; it resulted in an essential element of the crime (that the arrest be authorized) being removed from the jury's consideration. *See* Def. Ex. M at 1. Thus, at the time the criminal action was remanded, the State had yet to prove beyond a reasonable doubt all elements of the crime charged.

Judge Humphreys issued his decision reversing the conviction on November 4, 1994. From that date, the State had 90 days within which to retry plaintiff to avoid dismissal on speedy trial grounds. *See* N.Y.Crim. Pro. L. 30.30(1), (5). The only evidence in the record of the next action taken by the State indicates that on April 7, 1995, 147 days after Judge Humphreys issued his decision, the Otsego County District Attorney's Office moved to have a Special Prosecutor appointed. Def. Ex. N at 2. Over one month later, the Special District Attorney filed a statement of readiness for trial. *Id.* at 2–3. Defendants offer no reason whatsoever for the delay. Moreover, their assertion that "the prosecutor opposed the application for dismissal on speedy trial grounds" is directly contradicted by the very document they submit to support that assertion: the prosecutor's letter brief addressing the motion, which states: "I will not oppose [the] motion of dismissal on speedy trial grounds." Def. Ex. N at 2.

The State's "failure to proceed to the merits [after remand] compels an inference of such an unwillingness or inability to do so as to imply a lack of reasonable grounds for the prosecution." *Loeb v. Teitelbaum*, 77 A.D.2d 92, 432 N.Y.S.2d 487, 494 (2d Dep't 1980), *modified on other grounds*, 80 A.D.2d 838,

439 N.Y.S.2d 300 (2d Dep't 1981); *see Vitellaro v. Eagle Ins. Co.*, 150 A.D.2d 770, 541 N.Y.S.2d 614, 615 (2d Dep't 1989). Defendants have submitted no evidence, (e.g., a "non-merits-based explanation," *Murphy*, 118 F.3d at 951) from which the Court might draw a contrary inference.

The Court thus holds that, as a matter of law, the criminal proceeding commenced against plaintiff on the resisting arrest charge terminated in his favor.[2] Summary judgment is therefore denied on plaintiff's malicious prosecution claim as to this charge.

■ As to the reckless endangerment charges, defendants argue that although plaintiff was acquitted, he cannot show lack of probable cause. Alternatively, defendants argue they are entitled to qualified immunity with respect to the malicious prosecution claim based on the reckless endangerment charges.

■ New York Penal Law § 120.20 provides that "[a] person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991) (citing *Dunaway v. New York*, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)), *cert. denied*, 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). In support of their probable cause argument,

defendants rely entirely on a number of plaintiff's "admissions," establishing what they assert would be a reasonable belief that, in almost hitting Capozucco and Meyer with his truck, plaintiff had committed the crime of second degree reckless endangerment.

Interestingly, however, defendants submit no evidence of what Capacuzzo and Meyer *themselves* observed that day. They rely on plaintiff's impressions of his own driving in arguing that probable cause existed. The "admissions" defendants point to (unsupported by actual copies of the deposition testimony in which plaintiff allegedly made them) establish only that plaintiff did not stop as he pulled in his driveway, and that he drove within 2–3 feet of the troopers' vehicles.[3] Plaintiff does not admit speeding, driving at the troopers, or driving recklessly on his driveway. In fact, according to plaintiff and his secretary's version of events, plaintiff never came close to hitting the troopers at all. *See, e.g.*, Pl.Ex. 11 at 244–245; 296–299. According to plaintiff, Capozucco hadn't even gotten out of his car at the time plaintiff drove by, *see id.* at 296, and Meyer never took any "evasive action." *Id.* at 299. If the jury were to credit plaintiff's evidence and discredit defendants', they reasonably could conclude that probable cause for the reckless endangerment charges was lacking. Accordingly, summary judgment must be denied on this ground.

■ These same factual issues lead the Court to deny summary judgment based upon qualified immunity as well. The doctrine of qualified immunity shields government employees acting in their official capac-

---

2. In a one-sentence argument, defendants also argue that plaintiff's initial conviction on the resisting arrest charge precludes any showing of a lack of probable cause as to that charge. Defendants are wrong. "A conviction that has been reversed on appeal is no evidence of the existence of probable cause; to the contrary, 'evidence of a subsequent dismissal, acquittal or reversal on appeal would ... be admissible to refute ... justification.'" *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996) (quoting *Broughton v. State*, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 95, 335 N.E.2d 310, *cert. denied*, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975)).

3. Defendants also rely on what purports to be plaintiff's answer to one of defendants' interrogatories:

   Plaintiff does deny that he drove a truck onto his premises in such a way that the defendants or any one of them had reason to fear being struck by the vehicle or alarmed by his driving. The only possible exception is the officer who opened his car door as Plaintiff drove by, although Plaintiff notes that said officer denied, at Plaintiff's trial for reckless endangerment and resisting arrest, that he opened the door at or near the time that plaintiff passed by.

   Def. Ex. F. The Court declines to grant summary judgment based upon this equivocal response.

ity from suits for damages under 42 U.S.C. § 1983, unless their conduct violated clearly established rights of which an objectively reasonable official would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court has held that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," and "if officers of reasonable competence could disagree on [the legality of an act], immunity should be recognized." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

■ The parties do not dispute that the right to be free from malicious prosecution was clearly established at the time of the incident. Defendants argue, however, that they are entitled qualified immunity under the "objectively reasonable" test. "In order to be entitled to summary judgment on such a defense, [defendants] must adduce sufficient facts that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff, could conclude that it was objectively unreasonable for the troopers to believe that probable cause did not exist." *Golino,* 950 F.2d at 870. As noted above, plaintiff's evidence, if believed, could reasonably lead a jury to conclude that probable cause was lacking. That same evidence could lead to the conclusion that it was objectively unreasonable for the troopers to believe that probable cause was present. Because factual issues exist as to defendants entitlement to qualified immunity, summary judgment is denied in this respect.

### 3. Intentional Infliction of Emotional Distress

■ Defendants move for summary judgment as to plaintiff's claim for "intentional infliction of emotional harm." The cause of action defendants address, however, is one for *prima facie* tort, a claim found nowhere in the Amended Complaint. *See Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 464 N.Y.S.2d 712, 720, 451 N.E.2d 459 (1983). Plaintiff's claim is for intentional infliction of emotional distress.

■ The tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *See Howell v. New York Post Co.,* 81 N.Y.2d 115, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699 (1993). The threshold under New York law is quite high; the conduct must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized [society].' " *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86 (1983) (quoting Restatement of Torts, Second, § 46 cmt. d (1965)).

■ Plaintiff's claim is premised upon "[d]efendants acts of beating Plaintiff up and then charging him with bogus criminal offenses to cover up their actions." Pl. Mem. of Law at 9. For these very reasons, plaintiff's intentional infliction of emotional distress claim must be dismissed. No intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability. *See Fischer v. Maloney,* 43 N.Y.2d 553, 402 N.Y.S.2d 991, 993, 373 N.E.2d 1215 (1978); *Herlihy v. Metropolitan Museum of Art,* 214 A.D.2d 250, 633 N.Y.S.2d 106, 114 (1st Dep't 1995); *Butler v. Delaware Otsego Corp.,* 203 A.D.2d 783, 610 N.Y.S.2d 664, 665 (3d Dep't 1994); *Sweeney v. Prisoners' Legal Services of New York, Inc.,* 146 A.D.2d 1, 538 N.Y.S.2d 370, 374 (3d Dep't), *appeal dismissed,* 74 N.Y.2d 842, 546 N.Y.S.2d 558, 545 N.E.2d 872 (1989). Here, because the conduct complained of is squarely addressed by plaintiff's claims for malicious prosecution and assault and battery, his claim for intentional infliction of emotional distress must be dismissed.

### 4. Negligence

■ Defendants next argue that because plaintiff's excessive force and assault and battery claims are premised upon defendants' allegedly intentional conduct, no negligence claim lies with respect to the same conduct. The Court agrees. "[O]nce inten-

tional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently." *Mazzaferro v. Albany Motel Enterprises, Inc.*, 127 A.D.2d 374, 515 N.Y.S.2d 631, 632–33 (3d Dep't 1987); *see Locke v. North Gateway Restaurant, Inc.*, 233 A.D.2d 578, 649 N.Y.S.2d 539, 540 (3d Dep't 1996). Because plaintiff has brought excessive force and assault and battery claims addressing defendants allegedly unlawful use of force, the negligence claim must be dismissed. *See Oliver v. Cuttler*, 968 F.Supp. 83, 92 (E.D.N.Y.1997); *see also Mazurkiewicz v. New York City Transit Auth.*, 810 F.Supp. 563, 570–71 (S.D.N.Y.1993) ("Plaintiff cannot argue that defendants engaged in intentional conduct that forms the basis of an assault and § 1983 excessive force claim and also argue that defendants were negligent towards plaintiff.").

### 5. Plaintiff's Injuries

■ Defendants next turn their attention to plaintiff's alleged injuries. They first argue that because plaintiff has no expert evidence concerning causation of injuries to his eyes, knee, leg, back, or shoulder, *see* Am. Compl. ¶ 77, or of any permanent injury to any part of his body, they are entitled to summary judgment with respect to any claims relating to such injuries, or alternatively, an order *in limine* precluding plaintiff from introducing such evidence.

Plaintiff responds that "with respect to medical injuries, Plaintiff has produced voluminous reports from his treating physicians and/or chiropractors at various times over the past several years." Pl. Mem. of Law 13.[4] He fails to submit even a snippet of these "voluminous reports" on this motion,

however, entirely ignoring the fact that defendants move for summary judgment on this issue. Thus, having failed to raise a factual issue as to whether he sustained such injuries, or whether such injuries were caused by defendants on May 25, 1993, defendants' motion for summary judgment is granted in this respect. Accordingly, plaintiff's claims are dismissed insofar as they seek recovery for injuries to his eyes, knee, leg, back or shoulder, as alleged in paragraph 77 of his Amended Complaint, or for any permanent injuries to any part of his body.

■ Defendants also move *in limine* to preclude plaintiff from introducing evidence of medical or legal fees incurred as a result of defendants' actions. Defendants assert that plaintiff failed to produce such items during the course of discovery. Plaintiff does not address this motion as it relates to medical expenses. As to legal expenses incurred by plaintiff, he argues that he offered to produce proof of those expenses subject to an acceptable "confidentiality agreement," which has yet to be reached among the parties. If plaintiff is concerned about attorney/client privilege, his fear is misplaced. He has waived any privilege he may have had as to his legal expenses by placing the matter in issue, i.e., by seeking recovery for those expenses in this lawsuit. *See, e.g., Macmillan, Inc. v. Fed. Ins. Corp.*, 141 F.R.D. 241, 244 (S.D.N.Y.1992).

Rather than grant defendants' motion *in limine* in this respect, the Court will treat it as one to compel under Fed.R.Civ.P. 37 and give plaintiff one last chance. Plaintiff is directed to disclose the relevant information to defendants within twenty days of the date of this order. If plaintiff fails to disclose the information, or if the disclosure is insufficient

---

4. Moreover, in his Local Rule 7.1(f) Statement, plaintiff makes the following assertions:

49. Plaintiff has identified all of his treating chiropractors and physicians as expert witnesses in this matter and they are prepared to testify as to the treatment that they provided and how it relates to the injuries Plaintiff suffered to his eyes, knees, legs, back and shoulders as a result of Defendants [sic] acts.

50. Plaintiff's lay admission that he does not know exactly what part of his injuries can be attributed to the acts of the defendants and

what part might be attributable to other facts is not determinative, when Plaintiff is prepared to present competent testimony of the nature, cause and extent of his injuries.

Neither of these assertions, however, is supported by specific citations to the record as required by Local Rule 7.1(f). Nor is there any support in the record for these assertions. Plaintiff has submitted no expert reports whatsoever, nor any affidavits from his physicians regarding his injuries.

in any respect, defendants are hereby granted leave to renew their motion *in limine* prior to trial. Should plaintiff fail to comply with this order, he will be precluded from offering evidence pertaining to his legal or medical expenses at trial.

### 6. Excessive Bail

█ Finally, defendants move for summary judgment as to plaintiff's claim of excessive bail. The parties fails to address a number of issues, including: (1) whether the excessive bail clause in the Eighth Amendment applies to the states *via* the Fourteenth Amendment; or (2) whether a violation of the Excessive Bail Clause is addressable in a suit for damages. *See Pena v. Mattox*, 84 F.3d 894, 903 (7th Cir.1996). The Court need not address these questions, however, because it is apparent that the remaining defendants in this action, several troopers and an investigator, had no hand in setting plaintiff's bail. "Thus, there can be no causal connection between any action on the part of the defendants and any alleged deprivation of [plaintiff's] Eighth Amendment rights." *Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993). Summary judgment is therefore granted in this respect.

### III. CONCLUSION

For all of the foregoing reasons, it is hereby

**ORDERED**, that summary judgment is GRANTED as to plaintiff's Fifth Amendment, intentional infliction of emotional distress, negligence, and excessive bail claims; it is further

**ORDERED**, that summary judgment is GRANTED as to all claims for injuries to plaintiff's eyes, knee, leg, back or shoulder, or for any permanent injuries; it is further

**ORDERED**, that summary judgment is DENIED in all other respects, in accordance with the terms of this order; it is further

**ORDERED**, that plaintiff provide defendants with any evidence he intends to introduce at trial with respect to medical or legal expenses incurred within twenty days of the date of this order.

**IT IS SO ORDERED.**