Henry W. Lengyel, J.
The Pawloski claim was for assault and battery, medical expenses and humiliation and mental anguish allegedly sustained by the claimant incident to and as the result of an arrest by the State Police on June 20, 1960. The Zielinski claim was for assault and battery, unlawful arrest and detention, medical expense and mental suffering allegedly sustained by the claimant incident to and as the result of an arrest by the State Police on the same date. The claimants are not related. However, as both arrests and the alleged damages stemmed from the same situation they were consolidated for trial purposes. Both claims were duly filed and neither claim has been assigned.
The critical date in both claims was June 20, 1960. We have considered only the events of that date in arriving at our decision. However, we think it necessary to set forth the events which in our opinion, unnecessarily precipitated the events of June 20.
The Power Authority of the State of New York (hereinafter called the “ Authority ”) has constructed a transmission line which runs through the Town of Marcy in the County of Oneida. In order to construct this line it was necessary for the Authority to either appropriate land in fee or to obtain easements over private land. In the subject cases it was a matter of easements. The appropriation rights of the State and its authorities are clearly set forth in the statutes of this State. We do not set them forth herein as we are certain they are now and were in 1959 known to the Authority. However, sometime in December, 1959, contractors in the employ of the Authority descended upon the lands which were owned by the mothers of both of these claimants. Trucks and other equipment were driven onto these lands. Brush and trees were cut and burned. Fences, on dairy farmland and beef cattle farmland were broken and destroyed; and, even the clotheslines of claimant Stella Zielinski were broken down. Complaints were made to local *935 Authority officials but the activity continued until about June 8, 1960. Much of the above was accomplished by the Authority and its servants prior to the filing of any appropriation maps and notices of appropriation being given to the landowners and were in our opinion well beyond the rights given to the Authority to enter real property for the purposes of making surveys and maps or test borings. The appropriation maps were filed in the Secretary of State’s office on April 5, 1960. In the Pawloski case the notice of appropriation was filed in the Oneida County Clerk’s office on June 8, 1960; the appropriation map was filed in said County Clerk’s office on June 16, 1960; and, personal service of the notice of appropriation was served on the landowner on June 9, 1960. In the Zielinski case the notice of appropriation was filed in the Oneida County Clerk’s office on May 26, 1960; the appropriation map was filed on June 3, 1960; and, notice of the appropriation was served on June 8, 1960.
In this republic the rights of private property owners must be held in high and sacred trust. Granted, at times and for the good and the benefit of the majority, these rights must be abrogated but not without due notice and not without just compensation. That is the reason for the appropriation statutes; and verily, that is one of the reasons for the existence of this court. "When the State or one of its agencies arbitrarily uses its powers so as to violate private property rights it reduces the image of this republic and the trust of private citizens in that image. It is our hope that the new “ Special Committee to Review State Laws and Administrative Procedures for the Taking of Real Property and Compensating Owners ” will make recommendations which will prevent State agencies from so acting in the future. Frankly, however, we do not believe any statute can wholly take the place of using some common sense in exercising the power of condemnation.
The exacerbated conditions outlined above were brought to the attention of the State Police, and particularly to Lt. Harry Scoville, the zone commander in early June, 1960. He spoke with both of the claimants on June 9, 1960, and also on or about that date advised the Authority people to get their equipment off this land until he could investigate the situation. At a later date in June, the Lieutenant was advised by his superiors that the Authority had then the right to go on these lands as compliance had been made with the appropriation statutes. On June 20, 1960, the Authority contractors, the State Police (the Lieutenant and five troopers) and other persons, including news and television photographers appeared at the land owned by *936 claimants’ mothers. [Stephen Pawloski, who operated a farm on his mother’s land, was on the land riding a Palomino horse and Stella Zielinski, who operated a farm on her mother’s land, was on the other side of the road on the land riding a large drafthorse. 'The contractor’s employees cut the fence and drove two trucks onto the land in the vicinity of Mr. Pawloski who then proceeded to ride his horse in front of and at these trucks. The State Police, led by Lt. Scoville, then stepped on the remaining one strand wire fence, broke it down and ran into the field after Mr. Pawloski and his horse. Motion pictures of some of these events were received in evidence and graphically depicted part of this activity (Exhibit 10). They showed Mr. Pawloski urging his horse in front of and at the trucks. They further .showed one State trooper pulling Mr. Pawloski from his horse and holding him with a full nelson grip while another State trooper took his right wrist and handcuffed him. Mr. Pawloski was then led away to the troop car on the road. Almost immediately after the Pawloski arrest, Mrs. Zielinski rode her horse across the road, past her mother’s house and down behind her barn where she rode her horse away from but back and forth in front of the Authority’s or contractor’s trucks and in close proximity thereto. The State troopers chased after her and ,she was removed from her horse and was placed under arrest and taken to a troop car on the road. She was not handcuffed. Both claimants were then taken to the troop barracks in New Hartford, were held there about two hours and then were taken to a Justice of the Peace where charges were laid against them for violation of section 2034 of the Penal Law. Bail was set and they were released. The cases were eventually presented to the Grand Jury which did not indict. Bail was returned and these claimants were free.
The basic question presented to the court in both of these claims is the legality of the arrest without a warrant. The controlling .statute covering arrest without a warrant is section 177 of the .Code of ¡Criminal Procedure which, as it existed in 1960, stated “A peace officer may, without a warrant, arrest a person. 1. For a crime, committed or attempted in his presence This section of the code was amended in 1963 to add the following clause to subdivision numbered 1: or where he has reasonable grounds for believing that a crime is being committed in his presence. However, section 964 of the Code of Criminal Procedure provides: “No part of this Code is retroactive, unless expressly so declared ”. As section 177 of the code as amended in 1963 does not expressly declare that the *937 amendment shall he retroactive that section must be read and interpreted as it was on June 20, 1960.
An arrest without a warrant for a misdemeanor committed or attempted in the presence of the arresting officer comes within the intent of section 177 of the code. (People v. Caliente, 12 N Y 2d 89.) Further, when arresting without a warrant, it is not necessary that the person being arrested be informed of the authority of the officer or the cause of the arrest when said person is in the actual commission of a crime. (Squadrito v. Griebsch, 1 N Y 2d 471.) It is also clear that an arresting officer may use reasonable force to effect an arrest. (Penal Law, § 246; Lippert v. State of New York, 207 Misc. 632, 636.) Basic to all of the above is the commission of a crime or the attempt to commit a crime. The 'State contended in its brief that the record shows that not only the charged crime was committed or attempted but also several other crimes with which the claimants could have been charged. We do not believe it is our responsibility to investigate the spectrum of crimes set forth in the Penal Law so that we may choose an appropriate crime to substantiate an arrest ¡by the State. (Snead v. Bonnoil, 166 N. Y. 325; MacDonnell v. McConville, 148 App. Div. 49, affd. 210 N. Y. 529.) We do believe it necessary to examine the specific crime alleged in the information which, after all, serves the purpose of setting forth the acts constituting the crime and the crime itself. (Ford v. State of New York, 21 A D 2d 437; People v. James, 11 App. Div. 609 ; City of Buffalo v. Neubeck, 209 App. Div. 386.)
The claimants were each charged with violating section 2034 of the Penal Law of the State of New York which reads as follows: “ A person, guilty of using, or of procuring, encouraging or assisting another to use, any force or violence in entering upon or detaining any lands or other possessions of another, except in the cases and the manner allowed by law, is guilty of a misdemeanor.” The information spelled out the acts of the claimants which allegedly constituted this crime and stated that the specific misdemeanor was a “ Forcible Detention of Lands ” at the “ Easement appropriated by the State of New York Map #OM-1168, Parcel #1173 ”.
It is our opinion that in order to accomplish a forcible detention of land the act or acts of forcible detention must take place either on the land in question or, at the outside, on a public right of way or highway adjacent to the land in question. The cases and other law read by the court were generally concerned with the scope and meaning to be ascribed to forcible entry *938 rather than forcible detainer. The “ expression ‘ forcible entry,’ denotes the actor’s entry upon [emphasis supplied] land in the possession of another ”. (1 Restatement, Torts, § 87, p. 206; Fults v. Munro, 202 N. Y. 34; McMorris v. Howell, 89 App. Div. 272; People v. Baldwin, 74 Misc. 384.) Certainly there would not be a forcible entry without actual entry upon the land; just as certainly there cannot be a forcible detainer unless it is directly involved with the situs of the land itself. As was ¡stated in People ex rel. Kline v. Rickert (8 Cow. 226, 232): “ The law is, that the same circumstances of violence or terror which will make an entry forcible, will make a detainer forcible also; and whoever keeps in the house an unusual number of people, or unusual weapons, or threatens to do some bodily hurt to the former possessor if he dare return, shall be adjudged guilty of a forcible detainer, though no attempt be made to re-enter.”
The fact that these claimants were not indicted does not ipso facto mean a false arrest and imprisonment. (Freedman v. New York Soc. for Suppression of Vice, 248 App. Div. 517, affd. 274 N. Y. 559; Ranke v. State of New York, 206 Misc. 569, affd. 285 App. Div. 1113; Paul v. State of New York, 40 Misc 2d 328.) However, when the claimants established the fact of the arrests without warrant; the detention in the State Police barracks; the information and subsequent warrants of arrest; the arraignment and bail; and, the subsequent refusal of the G-rand Jury to indict, they established a prima facie case of false arrest and imprisonment. (Tranberg v. County of Nassau, 28 Misc 2d 275, 277.) The burden of proving probable cause or justification for the arrests then shifted to the State. As was stated in Snead v. Bonnoil (166 N. Y. 325, 328, supra): “False imprisonment has been well defined to be a trespass committed by one man against the person of another; by unlawfully arresting him and detaining him without any legal authority. * * * Where the detention is illegal the action will lie, without regard to the innocence of the defendant in his intentions. It is an important principle of our political institutions that every person is entitled to immunity from arrest except by authority and for cause. A peace officer may, without a warrant, arrest a person whenever a crime is committed, or attempted, in his presence * * *. If the arrest was lacking in these elements of authority to make it, then there has been an unlawful detention of the person arrested and, upon his bringing his action and showing the false imprisonment, the burden of justification is upon the defendant.”
*939 In our opinion, before the State could justify this arrest it must in this civil case present facts .sufficient to permit the court to find that the crime set forth in the information (Penal Law, § 2034) had been committed or attempted or that the State Police had probable cause to believe such crime had been committed or attempted. (Ranke v. State of New York, supra; Schultz v. Greemoood Cemetery, 190 N. Y. 276.) It is fundamental, in our opinion, that in order to justify this arrest for a violation of section 2034 of the Penal Law that the State prove where the alleged violence of the claimants occurred. This the State did not do. We could presume that it took place on the Authority easement. We could just as easily presume that it took place on claimants’ land. Presumptions are not findings of fact. We also point out that, if in fact, the acts of claimants did not occur on the Authority’s easement, then they did occur on claimants’ land. If the latter is true then the Authority was trespassing and the claimants may have had the right to use reasonable force to keep the Authority from their land (Prosser, Law of Torts [3d ed.], § 21) and the State Police may have arrested the wrong parties.
Under the law and the facts we find that both of these claimants were falsely arrested and imprisoned and that the State is liable for all damages flowing from such arrest and detention. We believe we should point out that the State Police involved in this situation acted with restraint; and if we had found a justifiable arrest, we would not have found that the State Police used unreasonable force to effect such arrests.
We find that claimant Stella Zielinski did not suffer any physical injury or medical expense related to the arrest and imprisonment. We find that said claimant did sustain a false arrest and imprisonment of several hours duration; an assault and battery in that she was touched by the State Police; and, suffered some shame and humiliation. We award said claimant Stella Zielinski the sum of $1,000 for all damages.
We find that claimant Stephen Pawloski sustained a sprain of the ligaments of his right wrist and forearm and some bruises and contusions and medical expenses. We find that such injuries were not permanent in nature and that said claimant did not lose any earnings. We further find that said claimant sustained a false arrest and imprisonment of several hours duration; an assault and battery; and, that he suffered some shame and humiliation. We award said claimant Stephen Pawloski the sum of $1,750 for all damages.
We reserved decision on the State’s motions to dismiss. We now deny such motions.
*940 Either party may submit findings of fact within 10 days from the receipt of this decision; if submitted they will be marked; otherwise, they shall be deemed waived.
This memorandum constitutes the written decision of the court in conformance with CPLR 4213 (subd. [b]).
Let separate judgments be entered accordingly.