**Michael A. NACCARATO, Plaintiff,**

v.

**Trooper Mark A. SCARSELLI and Trooper Craig Evert, Defendants.**

**No. 98–CV–1115.**

United States District Court, N.D. New York.

Dec. 14, 2000.

■

---

Thorn, Gershon, Towne, Tymann & Bonanni, LLP, Attorneys for Plaintiff, Albany, NY, William M. Hoblock.

Hon. Eliot Spitzer, Attorney General of the State of New York, Attorney for Defendants, Department of Law, Albany, NY, Sean D. Quinn, Asst. Attorney General, of counsel.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiff Michael Naccarato ("Naccarato" or "plaintiff") commenced the instant action pursuant to 42 U.S.C. §§ 1983 and 1988 alleging violations of his First, Fourth, Fifth, and Fourteenth Amendment rights. Plaintiff also asserts pendent state law claims for assault and battery, false arrest and imprisonment, and intentional and negligent infliction of emotional distress. The defendants New York State Troopers Mark Scarselli ("Tpr.Scarselli") and Craig Evert ("Tpr.Evert") have moved for partial summary judgment, pursuant to Fed.R.Civ.P. 56. Plaintiff opposes. Oral argument was heard on August 25, 2000 in Albany, New York. Decision was reserved.

## II. FACTS

This action arose out of incidents occurring in the early morning hours of July 19, 1997 in Kingston, New York. The defendants were working in a police car as part of a DWI patrol. They stopped the plaintiff after observing him change lanes without signaling while driving his car on Albany Avenue. He was not wearing his seatbelt and was unable to produce his driver's license when asked. This is

where the parties' version of events diverge.

According to the plaintiff, before he was issued the traffic summonses, he accused Tpr. Scarselli of harassing him because of a prior stop by Tpr. Scarselli a few weeks earlier.[1] The defendants went back to their car to prepare three traffic tickets. Shortly after, Tpr. Scarselli brought the tickets to Naccarato and began to explain them. The two men then engaged in a heated conversation. After Tpr. Scarselli finished explaining the tickets to plaintiff, he went back to his police car. Naccarato reentered traffic and the defendants followed behind. The parties proceeded down Pearl Street. Both vehicles turned right onto Washington Avenue. At the intersection of Washington Avenue and North Front Street, plaintiff stopped in the left lane at the traffic light. The defendants moved into the right lane next to plaintiff. While stopped at the light, plaintiff claims that Tpr. Scarselli mouthed a profanity at him.

When the light turned green, both parties proceeded down Washington Avenue and the defendants turned on their emergency lights in order to stop the plaintiff again. Tpr. Scarselli ran up to the car, told plaintiff that he was under arrest, reached into plaintiff's car and put it into park, and then pulled Naccarato out of the car. Plaintiff cooperated and got down on the pavement to be handcuffed. Tpr. Scarselli forced Naccarato's left arm up towards his shoulder blade, causing the plaintiff to immediately complain of shoulder pain. He was placed in the police car and taken to the police barracks. He remained there for an hour or two before being taken to the hospital for treatment.

According to the defendants,[2] after being stopped the first time, Naccarato asked Tpr. Evert whether his partner's name was Mark Scarselli and why Tpr. Scarselli was harassing him. Tpr. Scarselli heard profanities and his name, so he went to the driver's side of the vehicle to see if Tpr. Evert needed assistance. Plaintiff verbally threatened Tpr. Scarselli. The defendants went back to their vehicle to prepare the traffic tickets. Before returning to the plaintiff's vehicle, Tpr. Scarselli placed a tape recorder in his pocket to record his conversation because of plaintiff's prior threats against him. Tpr. Scarselli gave Naccarato the tickets and explained the proper procedures to follow. Plaintiff threatened Tpr. Scarselli again, which was recorded on tape. The parties reentered traffic and stopped side by side at the traffic light at the Washington Avenue/North Front Street intersection. There, plaintiff verbally threatened Tpr. Scarselli again. The defendants then turned on their emergency lights and stopped the plaintiff a second time.

When Tpr. Scarselli approached to make the arrest, he saw the car jerk, so he reached in, put it in park, and ordered Naccarato out of the car. When he failed to comply, the defendants pulled him out. Plaintiff continued to struggle while being handcuffed. He was placed in the police car and left the scene, at which time he complained of shoulder pain for the first time. Tpr. Scarselli arrested plaintiff for harassment in the second degree and resisting arrest. Naccarato was taken to the hospital for medical treatment. He was then arraigned and released. Plaintiff was acquitted of both charges.

The defendants seek dismissal of the following claims: All claims against Tpr. Evert; and false arrest and imprisonment (federal and state) with respect to the harassment charge, malicious prosecution on the harassment charge, First and Fifth Amendment claims, and state claims for

---

1. On that occasion, the plaintiff was allegedly speeding and passed Tpr. Scarselli on the road. No tickets were issued.

2. Although the defendants' version of events is presented in the statement of facts, as is required on a summary judgment motion, all facts and inferences will be viewed in a light most favorable to the nonmoving plaintiff.

intentional and negligent infliction of emotional distress against Tpr. Scarselli.[3] The plaintiff does not oppose dismissal of his Fifth Amendment claim and his claim against Tpr. Evert for malicious prosecution. Accordingly, this opinion will only address the following: False arrest and imprisonment claims (federal and state) against both defendants with respect to the harassment charge, malicious prosecution claim against Tpr. Scarselli with respect to the harassment charge, First Amendment claim against both defendants, pendent state claims for intentional and negligent infliction of emotional distress against both defendants, and the excessive force and assault and battery claims against Tpr. Evert.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the non-moving party "must do

more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56: *Liberty Lobby Inc.,* 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. Thus, summary judgment is proper where there is "little or no evidence ... in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

### B. False Arrest and Imprisonment Claim

■ "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (citation omitted). Under New York law, in order to assert a false arrest claim, a plaintiff must demonstrate that "the defendant intentionally confined him without his consent and without justification." *Id.* "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'" *Id.* (quoting *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994)).

■ Probable cause to arrest exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable

---

**3.** The plaintiff's remaining claims against Tpr. Scarselli for excessive force, assault and battery, and false arrest/imprisonment and mali-

cious prosecution for the resisting arrest charge are not at issue.

caution in the belief that an offense has been committed by the person to be arrested." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995)(internal quotations omitted). In order to determine if probable cause existed, "we consider the facts available to the officer at the time of the arrest." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 128 (2d Cir. 1997).

The issue of whether an arresting officer had probable cause to make the arrest may be determined as a matter of law if "the pertinent events and the knowledge of the officers" are not in dispute. *Weyant,* 101 F.3d at 852. If, however, the determination of whether probable cause existed is "predominately factual in nature," such a decision should be made by a jury. *Murphy v. Lynn,* 118 F.3d 938, 947 (2d Cir. 1997); *see also Moore v. Comesanas,* 32 F.3d 670, 673 (2d Cir.1994).

The plaintiff was charged with violating Penal Law § 240.26(1) which states: "A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person: 1. He or she strikes, shoves kicks or otherwise subjects such other person to physical contact, or attempt or threatens to do the same ...." It is clear from the statute that, in order to be guilty of harassment in the second degree, a person must 1) intent to harass, annoy or alarm another person *and* 2) either subject the other person to physical contact or attempt or threaten to do so. (Emphasis added). "While genuine threats of physical harm fall within the scope of the statute," statements which can be characterized as merely a "crude outburst" do not. *People v. Dietze,* 75 N.Y.2d 47, 54, 549 N.E.2d 1166, 1170, 550 N.Y.S.2d 595, 599 (1989).

The defendants allege that they had probable cause to arrest the plaintiff for harassment in the second degree because of the recorded remarks made against Tpr. Scarselli during the first stop and because that conversation shows that Naccarato was belligerent and hostile.

During the exchange, Naccarato said "You know you f——ed with the wrong person, pal. Okay, because I didn't do nothing wrong ...." and "I'll see you out and, um, and we'll have drink together, pal." (Scarselli Aff. Ex. A.) Plaintiff now claims that these statements were nonviolent and an invitation to have drink together and discuss the tickets. While this is unlikely, given the hostile and heated nature of the conversation, the words themselves are not a specific, direct threat and do not indicate a serious risk of imminent physical harm. As such, it is for a jury to determine the meaning of plaintiff's words, whether the plaintiff intended to harass, annoy, or alarm Tpr. Scarselli, and whether he was threatening physical contact.

In addition, it bears noting that the defendants let the plaintiff go after his alleged threats, followed him after allowing him to reenter traffic, and then stopped him a second time shortly after. Although the defendants are correct that there is no requirement to make an immediate arrest, it is questionable under the circumstances of this case why they would allow the plaintiff to go and then stop him again so soon thereafter. If they had probable cause to arrest Naccarato for harassment at the time of the first stop, as they now allege, it is curious that they chose not make the arrest, but then changed their mind. The defendants allege that the exchange which took place at the Washington Avenue/North Front Street traffic light, which is highly disputed, is irrelevant in analyzing whether probable cause existed to arrest the plaintiff for harassment. However, this exchange apparently is relevant, because it is this event which prompted them to stop the plaintiff that second time to arrest him. The defendants cannot now argue that this exchange had nothing to do with their determination to arrest plaintiff for harassment.

The defendants also claim that they had probable cause to arrest Naccarato for disorderly conduct and failing to display his driver's license at the first stop, and

therefore, even though these offenses were not charged, they had probable cause to stop him the second time for harassment. *See Wachtler v. County of Herkimer*, 35 F.3d 77 (2d Cir.1994)(holding that defendant's belief that he had probable cause to arrest the plaintiff for failing to produce identification was well-grounded even though he relied upon the wrong statutory provision). However, defendants' reliance upon *Wachtler* is misplaced.

First, in *Wachtler*, the correct statute and the statute plaintiff was charged with violating involved the same conduct; failing to produce identification. In this case, the defendants attempt to allege that probable cause to arrest the plaintiff for failing to produce his driver's license can be transformed into probable cause to arrest the plaintiff for harassing Tpr. Scarselli. However, clearly these offenses are highly distinguishable from each other and involve entirely separate conduct. Second, contrary to the defendants assertion, they did not have probable cause to arrest the plaintiff for disorderly conduct, as that offense requires "intent to cause public inconvenience, annoyance or alarm," Penal Law § 240 .20, and defendants do not allege that any member of the public were present during their conversations.

To sum up, since the circumstances of plaintiff's arrest involve resolution of factual questions concerning the interpretation of his words to Tpr. Scarselli and what took place at the Washington Avenue/North Front Street traffic light which prompted the second stop, summary judgment on plaintiff's false arrest and imprisonment claims is precluded.

### C. *Malicious Prosecution Claim Against Tpr. Scarselli* [4]

"To prevail on a claim of malicious prosecution, four elements must be shown: (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause

to believe the proceeding can succeed, (3) the proceeding was begun with malice, and (4) the matter terminated in plaintiff's favor." *Ricciuti*, 124 F.3d at 130. As noted above, an issue of fact exists as to whether or not the defendants had probable cause. The remaining issue is whether Tpr. Scarselli arrested plaintiff with malice.

"[M]alice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir.1996)(quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502–03, 377 N.E.2d 975, 406 N.Y.S.2d 443 (1978)).

Tpr. Scarselli argues that plaintiff's malicious prosecution claim against him should be dismissed because the plaintiff has failed to present any evidence of malice. Plaintiff contends that the record demonstrates sufficient evidence from which to infer malice.

■ After the first stop, Tpr. Scarselli implied that one of the reasons he stopped Naccarato was because a few weeks earlier he gave the plaintiff "a break" by not giving him a ticket. The conversation increasingly became heated and contentious. Towards the end of the exchange, the plaintiff said "And I will see ya. Have a nice night" to which Tpr. Scarselli responded "And I'll enjoy arresting you, if I do see you." (Scarselli Aff. Ex. A). After plaintiff reentered traffic, the defendants followed him down Pearl Street and turned right onto Washington Avenue. Then at the intersection of Washington Avenue and North Front Street, the defendants moved into the right lane in order to make a right turn onto Front Street. Rather than turning right on red, which was lawful, the defendants stayed at the light until it turned green. During this time, another

---

4. As mentioned above, plaintiff's malicious prosecution claim against Tpr. Evert is dis-

missed.

heated exchange occurred between Naccarato and Tpr. Scarselli, which prompted the second stop. At this stop, the defendants allegedly physically injured the plaintiff while arresting him.

Viewing the facts in a light most favorable to the plaintiff, there is sufficient evidence from which a jury may infer malice. There are questions of fact concerning whether the defendants had probable cause to arrest Naccarato for harassment in the second degree and whether plaintiff was antagonized and physically assaulted by Tpr. Scarselli. Accordingly, defendant Tpr. Scarselli's motion to dismiss the plaintiff's malicious prosecution claim against him must be denied.

### D. *Qualified Immunity*

▮ The defendants also contend that they are entitled to qualified immunity with respect to plaintiff's false arrest and imprisonment and malicious prosecution claims. "The doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999)(citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Ricciuti,* 124 F.3d at 127). A decision in favor of a public official based on qualified immunity is appropriate if 1) the conduct attributed to him is not prohibited by federal law, or, if such conduct is so prohibited, 2) if the plaintiff's right not to be subjected to such conduct was not clearly established at the time of the defendant's actions, or 3) if it was not objectively reasonable for the official to know that his conduct violated that right. *See X–Men Sec., Inc. v. Pataki,* 196 F.3d 56, 65–66 (2d Cir.1999); *see also Thomas,* 165 F.3d at 142–43. "The objective reasonableness test is met ... if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Thomas,* 165 F.3d at 143 (quot-

ing *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995)).

The right to be free from arrests which are not based on probable cause is clearly established. *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir.2000) (citations omitted). Therefore, accepting the facts as alleged by the plaintiff, and drawing all inferences most favorably to him, it must be determined whether as a matter of law it was objectively reasonable for the defendant to believe that his conduct did not violate the plaintiff's clearly established rights. *See Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.)(citing *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987)), *aff'g* 761 F.Supp. 962 (D.Conn.1991).

▮ Viewing the facts most favorably to the plaintiff, the defendants are not entitled to qualified immunity as a matter of law. As discussed above, *supra* p. 41–42, it is questionable whether, under the circumstances of the instant case, a reasonable officer would have believed there was probable cause to arrest the plaintiff for harassment in the second degree. Whether or not questions of fact on this issue are to be presented to a jury must await trial. *See Golino,* 761 F.Supp. at 972 (denying the defendants' motion for summary judgment with respect to the qualified immunity defense without prejudice to renew on a motion for a directed verdict or a motion for judgment notwithstanding the verdict); *see also Warren v. Dwyer,* 906 F.2d 70, 74 (2d Cir.1990)(stating that, where factual issues exist prior to trial, defense of qualified immunity may be raised at the close of plaintiff's case on a motion for a directed verdict and on a subsequent motion for judgment notwithstanding the verdict)(citing *Krause v. Bennett,* 887 F.2d 362, 365 (2d Cir.1989)).

### E. *First Amendment Claim*

The defendants allege that plaintiff's claim that they retaliated against him for exercising his free speech rights under the First Amendment must be dismissed because he has failed to plead the alleged

violation with sufficient particularity. A review of the plaintiff's amended complaint demonstrates that the defendants are correct. However, discovery has been conducted in this case and matters outside the pleadings have been submitted and considered. Therefore, the merits of plaintiff's First Amendment claim will be addressed rather than dismiss it because of insufficient pleading. *See* Fed.R.Civ.P. 12(b)(stating that, "[i]f, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment ...").

The defendants next contend that the plaintiff has failed to submit any evidence that his speech was protected under the First Amendment, as it was not a matter of public concern. However, this argument is rejected.

■■■ As an initial matter, "[t]he First Amendment guarantees all persons freedom to express their views." *X–Men Sec., Inc.,* 196 F.3d at 68–69. In order to state a § 1983 claim for retaliation for the exercise of First Amendment rights, a plaintiff must show that 1) his activity was protected by the First Amendment and 2) the defendant's conduct was in response to that protected activity. *See Posr v. Court Officer Shield # 207,* 180 F.3d 409, 418 (2d Cir.1999); *see also Smith v. Metro North Commuter R.R.,* No. 98 Civ. 2528 RWS, 2000 WL 1449865, at *4 (S.D.N.Y. Sept.29, 2000)(stating that a § 1983 claim lies by private individuals who are punished by public officials for their speech).

The United States Supreme Court has stated that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill,* 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). "Speech is protected 'unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or

unrest.'" *Metro North Commuter R.R.,* 2000 WL 1449865, at *5 (quoting *Terminiello v. City of Chicago,* 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949)). Thus, "[p]ure, non-obscene speech is protected unless the words, by their very utterance, inflict injury or tend to evoke immediate violence or other breach of the peace." *Id.*

■■■ The defendants have not cited any cases which stand for the proposition that speech is only protected by the First Amendment if is relates to a matter of public concern. In fact, in light of the above authorities, such is apparently not the case. In addition, plaintiff's First Amendment claim is premised on his statements to Tpr. Scarselli to the effect that Naccarato would "see him out." Viewing this statement and the other pertinent facts in a light most favorably to the plaintiff, plaintiff was not threatening immediate harm to Tpr. Scarselli. Therefore, defendants' motion to dismiss plaintiff's First Amendment claim must be denied.

### F. *Intentional and Negligent Infliction of Emotional Distress*

■■■ In New York, "intentional infliction of emotional distress is a theory of recovery that is to be invoked only as a last resort," when traditional tort remedies are unavailable. *See EEOC v. Die Fliedermaus, L.L.C.,* 77 F.Supp.2d 460, 472 (S.D.N.Y.1999)(quoting *McIntyre v. Manhattan Ford, Lincoln–Mercury, Inc.,* 256 A.D.2d 269, 682 N.Y.S.2d 167, 169 (1st Dep't 1998)). Accordingly, "[n]o intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability." *Hansel v. Sheridan,* 991 F.Supp. 69, 75 (N.D.N.Y.1998)(McAvoy, Chief Judge). In the instant case, since the conduct complained of are encompassed in plaintiff's claims for assault and battery and malicious prosecution, plaintiff's claim for intentional infliction of emo-

tional distress must be dismissed.[5]

■ Plaintiff's negligent infliction of emotional distress must also be dismissed. When a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie. *See Hansel,* 991 F.Supp. at 75–76; *see also Mazurkiewicz v. New York City Transit Auth.,* 810 F.Supp. 563, 570–71 (S.D.N.Y.1993)(holding that "[p]laintiff cannot argue that defendants engaged in intentional conduct that forms the basis of an assault and § 1983 excessive force claim and also argue that defendants were negligent towards plaintiff."); *Universal Calvary Church v. City of New York,* No. 96 Civ. 4606(RPP), 2000 WL 1745048, at *12 (S.D.N.Y. Nov.28, 2000)(granting summary judgment with respect to the plaintiffs' negligence and negligent infliction of emotional distress claims because the evidence established intentional conduct for assault and battery, rather than negligence). Since plaintiff's claims against the defendants are premised on their intentional conduct, his claim for negligent infliction of emotional distress must also be dismissed.

## G. Remaining Claims Against Tpr. Evert

■ Tpr. Evert seeks dismissal of plaintiff's excessive force and assault and battery claims against him. He alleges that plaintiff has presented no evidence that he ever touched Naccarato during the course of the arrest. However, review of the documents submitted in support of the defendants' motion reveals the contrary. Tpr. Scarselli testified that after they stopped the plaintiff the second time, "[e]ventually *we* get him out on to the ground." (Scarselli Dep. at 44)(emphasis added). Even more revealing is Tpr. Evert's own testimony that both he and

Tpr. Scarselli reached into the plaintiff's car, that he grabbed Naccarato's left arm to pull him from the vehicle, and that "[w]e place him face down on the driveway or on the road and tried to handcuff him behind his back." (Evert Dep. at 47–49.) This is sufficient evidence that Tpr. Evert was involved in the arrest and handcuffing of the plaintiff. Accordingly, summary judgment on this issue must be denied.

## IV. CONCLUSION

To sum up, questions of fact exist concerning whether the defendants had probable cause to arrest the plaintiff for harassment in the second degree, thus precluding summary judgment on plaintiff's false arrest and imprisonment claims. There is sufficient evidence in the record such that plaintiff's malicious prosecution claim against Tpr. Scarselli and First Amendment claim against both defendants can survive summary judgment. The evidence also demonstrates that plaintiff's excessive force and assault and battery claims against Tpr. Evert should not be summarily dismissed. However, plaintiff's pendent state claims for intentional and negligent infliction of emotional distress must be dismissed.

Accordingly, it is

ORDERED, that defendants' motion for partial summary judgment is GRANTED in part and DENIED in part;

1. The defendants' motion is GRANTED to the extent that plaintiff's Fifth Amendment claim, malicious prosecution claim against Trooper Craig Evert, and state law claims for intentional infliction of emotional distress and negligent infliction of emotional distress are DISMISSED;

2. The defendants' motion is DENIED in all other respects, and this action shall proceed to trial with respect to the following claims:

5. Plaintiff's assertion that the claims are not duplicative because his intentional infliction of emotional distress claim encompasses separate and distinct psychological injuries is not

persuasive. Such damages, if proven, are available, in the event that his assault and battery or malicious prosecution claims are successful.

a. Excessive force (federal) and assault and battery (state) against both defendants Trooper Mark Scarselli and Trooper Craig Evert;

b. False arrest and imprisonment (state and federal) against both defendants Trooper Mark Scarselli and Trooper Craig Evert;

c. Malicious prosecution against Trooper Mark Scarselli; and

d. First Amendment against both defendants Trooper Mark Scarselli and Trooper Craig Evert.

IT IS SO ORDERED.