Deborah LaLONDE, Plaintiff,

v.

Timothy **BATES** and David Bruce, Each Individually, and as a Police Officer of the City of Rome, New York; and City of Rome, New York, Defendants.

No. 5:00–CV–464.

United States District Court, N.D. New York.

Aug. 20, 2001.

B. Brooks, Benson, Lockwood & Golden, Utica, NY, for Plaintiff,

Office of Corporation Counsel, City of Rome, for Defendants, Rome, NY, James S. Rizzo, of Counsel.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. BACKGROUND

Plaintiff Deborah LaLonde ("plaintiff" or "Ms. LaLonde") brought this action pursuant to 42 U.S.C. §§ 1983, 1985, 1986, 1988, the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution,[1] and New York State law, claiming that Rome City Police Officers Timothy Bates ("Officer Bates") and David Bruce ("Officer Bruce") (collectively referred to as "defendants"), and the City of Rome, New York, violated her civil rights.[2] The defendants moved for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff opposed. Oral argument was heard on July 6, 2001, in Utica, New York. Decision was reserved.

## II. FACTS

On March 18, 1999, Rome Police Investigator Scott Hall ("Investigator Hall") obtained a warrant from the Rome City Court authorizing the search of Apartment # 2 located at 508 East Bloomfield Street in Rome, New York, a 1986 black Chevro-

---

1. Plaintiff has stated that she will discontinue any causes of action under the First and Fifth Amendments. (Benson Aff. ¶ 14.)

2. Plaintiff has voluntarily dismissed her federal claim of municipal liability against the City of Rome, New York. However, she continues to assert that it is liable for the alleged violations of state law by Officer Bates and Officer Bruce under the doctrine of respondeat superior. (Benson Aff. ¶ 14.)

let Cavalier automobile with the license plate number W174JM, and the person of Juan Breton ("Breton"). This warrant permitted the seizure of crack cocaine and a handgun.

On March 22, 1999, at about 7:30 p.m., Investigator Hall conducted a briefing at the Rome Police Station at which time he provided a number of police officers, including Officer Bates and Officer Bruce, with information regarding the search warrant. He informed the officers that Breton was suspected of being in possession of crack cocaine and a handgun, that he might be alone or accompanied by one or two women, and gave out the license plate number of the black Cavalier covered by the search warrant. During the briefing, two confidential informants called the police station and informed police that Breton was on his way to the apartment named in the search warrant. A number of police officers, including Investigator Hall, Officer Bates, and Officer Bruce, then proceeded to the apartment to await Breton's arrival.

On the date of this incident, plaintiff[3] resided in Apartment # 4 at 326 East Bloomfield Street in Rome, New York, which is approximately nine buildings away from the apartment named in the search warrant, and owned a 1986 blue Chevrolet Celebrity automobile, license plate number M800BZ. At approximately 8:00 p.m. on March 22, 1999, Ms. LaLonde left her apartment, went out to her car and started it up. It had been snowing that day, and plaintiff asserts she allowed the heater and rear window defroster to run while she brushed the snow off all the windows and the front and back of the car, including the headlights, taillights, and license plates. Ms. LaLonde then got into her car and exited the parking lot of the

apartment complex onto East Bloomfield Street, with the intention of picking her boyfriend up from work.

Almost immediately, plaintiff's car was pulled over by Officers Bates and Bruce. They had been instructed to stop the vehicle by Investigator Hall after he observed the plaintiff's dark colored Chevrolet exiting the parking area of the apartment complex. After pulling her vehicle off to the side of the road and rolling down the driver's side window, plaintiff was verbally instructed to turn off the car and throw her keys out the window. She was then ordered to exit the vehicle, place her hands behind her head and walk backwards toward the officers. Plaintiff was then told to get down on her knees and lie face down on the road with her arms outstretched. Plaintiff complied with all of these demands. Ms. LaLonde repeatedly asked the officers why she had been stopped and what she had done wrong, only to be told to be quiet.

As she was lying in the street, Officer Bruce grabbed the back of plaintiff's jacket as Officer Bates held her right arm behind her back, and they both pulled her off the ground. At this time, Investigator Hall arrived at the scene and instructed Officers Bates and Bruce not to handcuff plaintiff, as she was not a suspect. He then asked plaintiff to get into her car and drive to a nearby parking lot. While at the parking lot, Investigator Hall explained to Ms. LaLonde that the police had made a mistake, apologized to her, and told her she was free to go.

Plaintiff asserts that fifteen to twenty minutes passed between the time she was pulled over to the time she was told she was free to go, and that for at least part of the incident, the officers had their guns

---

**3.** Plaintiff is a forty-year-old woman. She is a diabetic and suffers from diabetic neuropathy. Additionally, she had previously fractured her

left shoulder and had only 70% use of her left arm at the time of this incident.

drawn. Following this incident, plaintiff was counseled by Certified Social Worker, John Carroll, who diagnosed her with post-traumatic stress disorder, with various symptoms including depression, flash-backs, nightmares, and panic attacks, stemming from the incident.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issues as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoije*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita Elec. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. Thus, summary judgment is proper where there is "little or no evidence . . . in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

### B. Unlawful Search and Seizure

The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). To determine whether a seizure was reasonable under the Fourth Amendment, a two-prong test must be applied to the action in question. *Dempsey v. Town of Brighton*, 749 F.Supp. 1215, 1222 (W.D.N.Y.1990), *aff'd sub nom. Curenton v. Town of Brighton*, 940 F.2d 648 (2d Cir.1991)(Table). "First, the court must determine whether the officer's action was justified at its inception." *Id.* This requires the police officer to be able "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21, 88 S.Ct. 1868. Second, the action must be "reasonably related 'in scope' to the circumstances which justified the [seizure] in the first place." *Dempsey*, 749 F.Supp. at 1222.

In the instant case, defendants argue that they acted reasonably in stopping Ms. LaLonde's vehicle on March 22, 1999, and that enacting felony-stop procedures which culminated in plaintiff's lying in the street, terrified, was justified under the circumstances. However, plaintiff presents a number of facts which call into question the reasonableness of the defen-

dants' actions. First, the defendants were in possession of a detailed description of the vehicle named in the search warrant, including make, model, year, color, and most importantly, license plate number. Plaintiff's car, although the same make and year as the suspect car, was a different model and color, and displayed a different license plate number than the vehicle named in the warrant. Second, defendants were told to look for a Hispanic male, who could be alone or accompanied by one or two women. Plaintiff, a white female, was alone in her car when defendants stopped her vehicle.[4] Third, defendants were at the apartment complex awaiting Breton's arrival. Plaintiff was driving away from the apartment complex on her way to pick up her boyfriend at the time defendants stopped her vehicle. And fourth, plaintiff was alone, unarmed, non-confrontational, and cooperated fully with defendants demands, calling into question the necessity and reasonableness of felony-stop procedures.

■■■ Defendants argue that they are protected from liability for unlawful search and seizure by virtue of the fellow officer rule. "Under [this] rule, arresting officers may rely upon information or direction from another officer because the directing officer is presumed to possess probable cause." *Mendoza v. City of Rome*, 872 F.Supp. 1110, 1116 (N.D.N.Y.1994). Defendants maintain that they reasonably relied on Investigator Hall's instructions to stop plaintiff's vehicle, assuming that Hall had probable cause for the stop. However, when a seizure is challenged, the government must establish that the officer giving the instructions actually possessed

probable cause, and if they are unable to do so, the arrest is unlawful, regardless of the arresting officer's good faith. *Id.* Investigator Hall merely "observed a dark colored Chevrolet car matching the general description of the suspect vehicle exiting the parking lot . . . ." (Hall Aff. ¶ 4.) This is insufficient to hold, as a matter of law, that Hall had probable cause to stop Ms. LaLonde. Therefore, the fellow officer rule does not absolve the defendants of liability under the circumstances of this case.

### C. *Excessive Force*

■■■ Allegations of excessive force against police officers effecting a seizure of the person "must be analyzed under the Fourth Amendment and its standard of objective reasonableness." *Anderson v. Branen*, 17 F.3d 552, 558 (2d Cir.1994)(citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)); *see also Kerman v. City of New York*, 261 F.3d 229 (2d Cir.2001). This standard requires evaluating whether the officers acted reasonably in light of the totality of facts and circumstances present at the scene. *Anderson*, 17 F.3d at 559; *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir.1995). Factors to consider are the "severity of the crime at issue, whether the suspect possesses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Additionally, any force used in effecting an unlawful seizure

---

**4.** Defendants contend that snow covered plaintiff's vehicle at the time of her stop, rendering it impossible for them to view either her license plate number or the interior of her vehicle. Plaintiff disputes this claim, maintaining that she had completely removed any snow from her vehicle prior to getting

into her car and· driving out of the apartment complex's parking area, and that it was only lightly snowing at the time defendants stopped her vehicle. These disputed material issues of fact further illustrate why summary judgment cannot be granted.

of the person is considered excessive and unlawful. *Atkins v. New York City*, 143 F.3d 100, 103 (2d Cir.1998).

 Because material questions of fact exist with regard to the reasonableness of the defendants' actions in stopping Ms. LaLonde's vehicle, it follows that material questions of fact exist as to the lawfulness of the stop. If the stop itself was unlawful, any force used by the defendant's in effecting that stop is excessive. *Id.* Therefore, the existence of factual questions preclude summary judgment on the issue of excessive force as the reasonableness determination is more properly made by a jury.

### D. *Discrimination and Conspiracy*

Plaintiff asserts causes of action against the defendants for discrimination and conspiracy under 42 U.S.C. §§ 1985 and 1986. Defendants move for summary judgment with regard to these claims on the basis that they are conclusory and unsubstantiated, and thus unsuitable as a basis for federal civil rights actions. Plaintiff has agreed to discontinue her conspiracy claim. (Benson Aff. ¶ 14.) Because plaintiff has failed to oppose defendants' motion for summary judgment with regard to the discrimination claim, defendants' motion shall be granted.

### E. *Assault and Battery*

 New York State law regarding assault and battery parallels the federal laws regarding excessive force. Specifically, "[i]f an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest." *Sulkowska v. City of New York*, 129 F.Supp.2d 274, 294 (S.D.N.Y. 2001); *Johnson v. Suffolk County Police Dep't*, 245 A.D.2d 340, 341, 665 N.Y.S.2d 440 (N.Y.A.D. 2 Dept.1997); *see also Budgar v. State*, 98 Misc.2d 588, 592, 414 N.Y.S.2d 463 (N.Y.Ct.Cl.1979); *Pawloski v. State*, 45 Misc.2d 933, 939, 258 N.Y.S.2d 258 (N.Y.Ct.Cl.1965). Therefore, summary judgment must be denied with respect to plaintiff's assault and battery claims for the same reasons discussed in the excessive force subsection, *supra*, p. 718–19. The defendant City of Rome must remain a defendant on the doctrine of respondeat superior.

### F. *False Arrest and False Imprisonment*

 "A civil action is commenced by filing a complaint with the court." Fed. R.Civ.P. 3. This complaint must contain "a short and plain statement of the claim[s]" upon which the plaintiff seeks relief. Fed. R.Civ.P. 8. This requirement serves to ensure that the defendants are aware of each claim upon which the plaintiff seeks to recover. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988).

 In the instant case, plaintiff fails to state a claim for false arrest and/or false imprisonment under New York State law in her complaint, as required by Rule 8. The first mention of this claim appears in plaintiff's Attorney's Affidavit in Opposition to Motion for Summary Judgment. (Benson Aff. ¶ 10). This is insufficient. Further, plaintiff made no attempt to amend her complaint in order to add a claim for false arrest and/or false imprisonment pursuant to Fed.R.Civ.P. 15. Therefore, plaintiff's allusions to a viable claim for false arrest and/or false imprisonment are invalidated by her failure to properly address them in her complaint.

### G. *Negligence and Gross Negligence*

 New York State law bars a plaintiff from bringing a negligence claim once "intentional offensive contact has been established." *Hansel v. Sheridan*, 991 F.Supp. 69, 75–76 (N.D.N.Y.1998). In

other words, "[w]hen a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." *Naccarato v. Scarselli*, 124 F.Supp.2d 36, 45 (N.D.N.Y.2000); *see also Oliver v. Cuttler*, 968 F.Supp. 83, 92 (E.D.N.Y.1997).

■ Because Ms. LaLonde has asserted claims of unlawful search and seizure, excessive force, and assault and battery, and pled facts which lend support to these claims, she cannot additionally argue that the same facts would give rise to a claim for either negligence or gross negligence. Therefore, plaintiff's claims with regard to negligence and gross negligence must be dismissed as inconsistent with the intentional torts pled.

### H. *Qualified Immunity*

■ Defendants assert that they are immune to liability under plaintiff's claims of unlawful search and seizure and excessive force due to the doctrine of qualified immunity. "The doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir.1999)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 127 (2d Cir.1997)). A decision in favor of a public official based on qualified immunity is appropriate if (1) the conduct attributed to him is not prohibited by federal law, or if such conduct is so prohibited; (2) if the plaintiff's right not to be subjected to such conduct was not clearly established at the time of the defendant's actions; or (3) if it was not objectively reasonable for the official to know that his conduct violated that right. *See X–Men Sec., Inc. v. Pataki*, 196

F.3d 56, 65–66 (2d Cir.1999); *see also Thomas*, 165 F.3d at 142–43. "The objective reasonableness test is met ... if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Thomas*, 165 F.3d at 143 (quoting *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir.1995))(quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

■ Viewing the facts most favorable to the plaintiff, questions exist as to whether the defendants' actions were objectively reasonable. The determination of whether the officers are entitled to qualified immunity from liability in this civil rights action, is properly left for the time of trial. *See Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir.1999); *see also Lennon*, 66 F.3d at 420; *Naccarato*, 124 F.Supp.2d at 45. Defendants' request for summary judgment based on the affirmative defense of qualified immunity must be denied.

## IV. *CONCLUSION*

Because questions of material fact exist as to the reasonableness of the defendants' actions, summary judgment is precluded with respect to plaintiff's claims of unlawful search and seizure and excessive force under federal law, and assault and battery under state law. These questions of fact similarly preclude defendants' asserted defenses of qualified immunity and the fellow officer rule.

Accordingly, it is

ORDERED, that the defendants' motion for summary judgment is GRANTED in part and DENIED in part:

1. Defendants' motion is GRANTED to the extent that following claims are DISMISSED:

 a. False arrest and false imprisonment;

 b. Negligence and gross negligence; and

c. Discrimination and conspiracy;

d. First and Fifth Amendment; and

e. City of Rome (except the assault and battery claim);

2. Defendants' motion is DENIED with respect to the following claims:

a. Unlawful search and seizure;

b. Excessive force; and

c. Assault and battery.

IT IS SO ORDERED.